IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DARRYL B. RICE** | : | |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | CASE NO. 1:26-cv-155 |
| | : | |
| | : | JUDGE BARRETT |
| **MARY SCHELL, et al.,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
*Counsel of Record*
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
Ann.Yackshaw@OhioAGO.gov

*Counsel for Defendants*

1

## INTRODUCTION

Plaintiff's motion asks this Court to do what a TRO cannot: rewrite state law and undo nearly a year of institutional changes—all on an emergency basis. A TRO is an extraordinary remedy designed to preserve the status quo, not to upend it. Yet Plaintiff seeks sweeping, undefined relief that would require Miami University to dismantle months of compliance with Senate Bill 1 and resurrect prohibited programs. Moreover, Plaintiff expects Defendants to provide this expansive relief immediately, while the Parties litigate his request for a preliminary injunction. That request is not only legally unsound but also practically impossible.

The impropriety of Plaintiff's motion becomes clear in context. Senate Bill 1 prohibits public universities from maintaining diversity, equity, and inclusion offices, committees, and related programming. Defendants implemented these changes months ago, winding down DEI programs and adopting policies consistent with the law. Plaintiff, a professor at Miami University, opposed these changes internally, but he waited nearly a year to bring this lawsuit. That delay alone demonstrates this is not an emergency.

But even setting aside these procedural and equitable defects, this Court should deny Plaintiff's motion because he is unlikely to succeed on the merits. His constitutional claims misapply settled law: S.B. 1 does not restrict classroom speech, and regardless, *Garcetti* bars claims based on official duties; the discontinued programs were not public fora; and no facts show intentional discrimination or deprivation of a fundamental right. Plaintiff's Title VII claims are unexhausted and unsupported, and his state-law claim is jurisdictionally barred. Plaintiff has not established the "high likelihood of success on the merits" required for a TRO. *Touray v. Lynch*, No. 1:25-cv-683, 2025 U.S. Dist. LEXIS 193205, at *6 (S.D. Ohio Sept. 30, 2025).

For these reasons, and those that follow, the motion should be denied.

2

**BACKGROUND**

Plaintiff, Dr. Darryl B. Rice, is a tenured professor in the Farmer School of Business at Miami University. Plaintiff teaches Diversity and Cross-Cultural Management courses and, until the passage of Senate Bill 1, took an active role in Miami University's school-sponsored diversity, equity, and inclusion (DEI) programming. For example, Plaintiff served as the co-chair of the business school's DEI service committee and regularly presented research at Miami's "Across-The-Divide" DEI conference. Compl. ¶¶ 68, 71, Doc. 1 at PageID 10.

These DEI efforts fulfilled some of Plaintiff's obligations as a Miami University faculty member. Each year, professors in the Farmer School of Business are evaluated in three areas: (1) teaching, (2) research, and (3) service. *See* Compl. Exs. 16–18, Doc. 1-1 at PageID 87–102. Plaintiff's recent performance reviews demonstrate "significant service contributions in the area of diversity, equity, and inclusion (DEI) at various levels." Compl. Ex. 16, Doc. 1-1 at PageID 91. Plaintiff's 2025 evaluation, for example, highlighted his chairmanship of the business school's DEI committee as a "meaningful contribution[] to institutional priorities" that satisfied his yearly service requirement. Compl. Ex. 18, Doc. 1-1 at PageID 102.

Among other changes to higher education, the passage of S.B. 1 fundamentally reworked the presence of DEI on public college campuses in Ohio. S.B. 1 largely prohibits public colleges and universities from offering DEI offices, departments, orientations, trainings, or scholarships. Ohio Rev. Code § 3345.0217(B). The law forbids public colleges and universities from using political or ideological litmus tests, including the use of diversity statements, in hiring, promotions, or admissions. *Id*. While S.B. 1 essentially banned school-sponsored DEI programs, it did not prohibit DEI *instruction* or otherwise inhibit academic freedom. The law does not prohibit "faculty

3

or students from class room instruction, discussion, or debate, so long as faculty members allow students to express intellectual diversity." Ohio Rev. Code § 3345.0217(D)(1).

Governor DeWine signed S.B. 1 in March 2025, and it went into effect that June. In preparation for the law's effective date, Miami University began winding down its DEI programming in spring 2025. The university "discontinued faculty-led committees, academic conferences, newsletters, listservs, faculty professional development programs, career fairs, student professional development opportunities, offices that perform knowledge dissemination and transmission activities, and student support centers that Plaintiff used to fulfil[l] his contractually obligated service requirements." Compl. ¶ 61, Doc. 1 at PageID 9. As with any large-scale changes, these efforts came in waves. The university shuttered some DEI programs before S.B. 1 took effect. *See, e.g.*, Compl. Ex. 12, Doc. 1-1 at PageID 78 (April 2025 announcement of closures of three DEI-focused offices). On the other hand, the business school's DEI committee met in September 2025, well after S.B. 1's effective date. But Miami University discontinued the committee shortly thereafter. Compl. ¶ 129, Doc. 1 at PageID 18; Compl. Ex. 23, Doc. 1-1 at PageID 118.

Plaintiff strenuously opposed S.B. 1's implementation, through both informal correspondence with university officials and formal complaints. *See, e.g.*, Compl. Ex. 29, Doc. 1-1 at PageID 138 (October 2025 email from Plaintiff to Miami University General Counsel expressing frustration with S.B. 1 implementation). Plaintiff filed a claim of racial discrimination in April 2025, complaining about the cancellation of three DEI-focused programs. Compl. ¶ 104, Doc. 1 at PageID 14; *see also* Compl. Ex. 12, Doc. 1-1 at PageID 78. Citing S.B. 1, the university's Office of Equity and Equal Opportunity refused to reconsider the closures. *Id*. And in September, Plaintiff filed a complaint under the university's free-speech policy, targeting the "systemic

4

suppression of diversity, equity, and inclusion on campus." Compl. ¶ 135, Doc. 1 at PageID 19; Compl. Ex. 28, Doc. 1-1 at PageID 136. The Office of General Counsel found no bona fide allegation of free-speech violations and closed the complaint without further action. Compl. Ex. 28, Doc. 1-1 at PageID 136.

Plaintiff now turns to federal court. Plaintiff challenges Miami University's cancellation of DEI programs and activities and its purported misinterpretation of S.B. 1 under federal and state law. Compl. ¶¶ 177–261, Doc. 1 at PageID 25–37. Chief among his complaints is that the discontinuation of school-sponsored DEI programs prevents him from obtaining service credits for his participation in those programs. *See, e.g.*, Compl. ¶ 232, Doc. 1 at PageID 33. Further, Plaintiff alleges that Defendants are "undermining . . . Plaintiff's professional legitimacy," by devaluing DEI, his area of professional expertise. Compl. ¶¶ 56–57, Doc. 1 at PageID 8. He seeks a temporary restraining order and preliminary injunction. TRO Mot. at 23, Doc. 2 at PageID 264. Among other forms of relief, he asks this Court to "restor[e] the status quo ante as it existed" in April 2025, reconstitute the business school's DEI committee and other DEI programs and activities on campus, and enjoin portions of S.B. 1. Compl. at Prayer for Relief, Doc. 1 at PageID 37–38; TRO Mot. at 23, Doc. 2 at PageID 264.

## LAW AND ARGUMENT

### I.    Legal standard

A temporary restraining order preserves the status quo. To obtain a temporary restraining order, Plaintiff must show: (1) he has a strong likelihood of success on the merits; (2) he would suffer irreparable injury absent the injunction; (3) issuance of an injunction would not cause substantial harm to others; and (4) the public interest would be served by issuance of an injunction. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). Such relief "is an extraordinary and

drastic remedy one that should only be awarded upon a clear showing that the plaintiff is entitled to such relief." *S. Glazer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) (citations omitted).

## II. Plaintiff seeks sweeping, yet amorphous, relief that is unavailable at this litigation's early stages.

Plaintiff's TRO motion suffers from multiple fatal deficiencies independent of the well-worn four-factor test for injunctive relief. A TRO should be appropriately tailored to the complained-of harm, and it should preserve the status quo. But here, Plaintiff's requested TRO would require sweeping, but ill-defined, changes in Miami University's governance. These deficiencies justify a denial of the TRO before the Court even addresses the four-factor test.

### A. The requested TRO is fatally overbroad.

To justify a TRO, "[t]he harm must be 'so immediate' that relief is necessary before a preliminary injunction hearing can occur." *Jones v. Jenkins Indep. Sch. Dist.*, No. 6:26-cv-00055-GFVT, 2026 U.S. Dist. LEXIS 4818, at *4 (E.D. Ky. Jan. 12, 2026) (citation omitted). Moreover, "TROs are 'sharply limited [in] duration' (typically 14 days), one of the primary factors differentiating a TRO from a preliminary injunction." *Bobay v. Wright State Univ.*, No. 22-4007, 2023 U.S. App. LEXIS 14825, at *5–6 (6th Cir. June 13, 2023) (citing 11A Wright & Miller, Fed. Prac. & Proc. § 2953 (3d ed. 2023)). Consistent with this narrow scope, courts routinely reject requested TROs that are overbroad. *See, e.g.*, *FCA US LLC v. Bullock*, No. 17-cv-13972, 2018 U.S. Dist. LEXIS 29917, at *11 (E.D. Mich. Feb. 26, 2018) ("The temporary restraining order requested . . . is far too broad." (citation omitted)).

Here, even if the Court were to construe Plaintiff's Motion narrowly, the relief he seeks is overbroad, too vague, or both. For instance, he asks the Court to "restor[e] the status quo ante as it existed prior to the Defendants' discretionary decisions announced on April 18, 2025." TRO

6

Mot. at 23, Doc. 2 at PageID 264. It is unclear how the Court could craft such a broad and amorphous remedy. Under Plaintiff's request, are Defendants obligated to reestablish any organizations that they shuttered last April? Are they required to rehire or reassign staff? And how would they do so for only a matter of weeks until the preliminary injunction can be litigated? In essence, Plaintiff is asking this Court to turn back the clock ten months—but only on a temporary basis.

Much the same is true for Plaintiff's other requests. He asks this Court to issue a TRO "to prevent further immediate and irreparable injury to Plaintiff's professional reputation, international leadership standing as Academy of Management DEI Division Chair-Elect, and the specific 'visibility' mandates of the Richard T. Fanner Associate Professorship." TRO Mot. at 23, Doc. 2 at PageID 264. But it is unclear what the terms of such a TRO would be. Defendants cannot unilaterally alter Plaintiff's "professional reputation" and "international leadership standing." The requested TRO is too amorphous to issue or enforce and should be denied.

      **B.**      **The TRO would upend the status quo.**

Even if the Court could somehow crystallize the April 2025 status quo into a TRO, implementing it on a temporary basis would exceed the scope of permissible injunctive relief. "A temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits." *Stein v. Thomas*, 672 F. App'x 565, 572 (6th Cir. 2016); *accord Bobay*, 2023 U.S. App. LEXIS 14825, at *5–6 (noting a TRO is "designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction." (quoting 11A Wright & Miller, Fed. Prac. & Proc. § 2951 (3d ed. 2023))).

7

Rather than seeking to preserve the status quo, Plaintiff asks this Court to grant him complete relief at this preliminary stage. *See* TRO Mot. at 23–24, Doc. 2 at PageID 264–65. In fact, Plaintiff appears to have copied and pasted the entirety of his requested relief from his Complaint into his Motion. *Compare* Compl. at Prayer for Relief, Doc. 1 at PageID 37–39, *with* TRO Mot. at 23–24, Doc. 2 at PageID 264–65. A TRO is not a vehicle for circumventing traditional litigation to attain full relief; it is an extraordinary remedy for preserving the status quo during especially exigent circumstances. *See Stein*, 672 F. App'x at 572. Here, the status quo—which has existed for nearly a year—is that Defendants have implemented S.B. 1 in good faith by making numerous institutional changes. Plaintiff's requested TRO would not preserve the status quo; it would "demolish[] it." *Stein*, 672 F. App'x at 573 (McKeague, J., dissenting).

**III.     The equities do not favor a temporary restraining order.**

Even if Plaintiff had requested a right-sized TRO, the equities do not favor it. While Plaintiff's ten months of inaction show that he has not been irreparably harmed, the issuance of a TRO now would injure Defendants and the public.

**A.     Plaintiff's delay undermines any allegation of irreparable harm.**

A TRO may issue when irreparable harm will occur "before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1); *Centa v. Portage Cnty.*, No. 5:25-cv-1947, 2025 U.S. Dist. LEXIS 184186, at *4 (N.D. Ohio Sept. 17, 2025) ("[Plaintiff] does not discuss how a delay to allow defendants to respond to his motion would cause any harm. The motion thus fails to establish a sufficiently imminent harm."). The potential harm must be both immediate and irreparable to justify the issuance of a TRO. *Sarnova HC, LLC v. Reetz*, No. 2:21-cv-0601, 2021 U.S. Dist. LEXIS 65527, at *9 (S.D. Ohio Apr. 5, 2021).

8

Typically, the denial of a constitutional right suffices to show immediate and irreparable harm. But a delay in seeking emergency relief cuts against that finding, even when the harm would otherwise qualify as immediate and irreparable. *See Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.,* 511 F. App'x 398, 405 (6th Cir. 2013) ("[A]n unreasonable delay in filing for injunctive relief will weigh against a finding of irreparable harm."). "[A] party requesting a preliminary [order] must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (citing *Holmberg v. Armbrecht*, 327 U. S. 392, 396 (1946)); *accord Lucking v. Schram*, 117 F.2d 160, 162 (6th Cir. 1941) ("[E]quity aids the vigilant, and not those who slumber on their rights."). "Last-minute requests for emergency injunctive relief without a convincing explanation for the timing of the request are strongly disfavored." *Jacquelyn S Jordan Tr. v. City of Franklin*, No. 3:22-cv-00326, 2022 U.S. Dist. LEXIS 86013, at *1 (M.D. Tenn. May 12, 2022) (citing *Lucking*, 117 F.2d at 162).

Indeed, waiting just one month may foreclose emergency relief. *See, e.g.*, *Shortridge v. Centrus Energy Corp.*, No. 2:21-cv-5336, 2021 U.S. Dist. LEXIS 271481, at *5 (S.D. Ohio Nov. 22, 2021) ("Plaintiffs waited at least a full month, coincidentally the day they were required to be vaccinated, before filing for a TRO. This delay severely undercuts their claim of immediate harm."). Delays of ten months are "significant" and "severely undermine[]" requests for emergency relief. *Sarnova*, 2021 U.S. Dist. LEXIS 65527, at *10–11 (collecting cases). This makes sense: waiting nearly a year to seek "emergency" relief suggests that the need for immediate relief is not, in fact, immediate. *Id*.

Here, Plaintiff delayed ten months in seeking emergency relief. Plaintiff complains about every DEI-related decision Miami University has made since April 2025, and he asks the Court to restore the April 2025 status quo. But he offers no excuse for waiting nearly a year to seek

9

emergency relief. He does not argue that he only recently discovered his injury. Nor does he argue that Defendants somehow prevented this lawsuit.

During this ten-month delay, Miami University made major changes to bring itself into compliance with S.B. 1. For example, in August 2025, it issued a policy on Diversity, Equity, Inclusion, and Other Concepts. *See* Miami University, *Diversity, Equity, Inclusion, and Other Concepts*, University Policy Library, https://miamioh.edu/policy-library/governance/diversity-equity-inclusion-other-concepts.html (last visited Feb. 20, 2026). This policy implements Ohio Rev. Code § 3345.0217. It prohibits DEI offices, departments, orientations, training courses, and scholarships while affirming the university's commitment to intellectual diversity and academic freedom. As alleged in Plaintiff's complaint, the university also shuttered or discontinued the campus programs and activities it considered to be in violation of S.B. 1. The university did all this in reliance on S.B. 1 and with the understanding that S.B. 1 now controls.

Now, Plaintiff wants to upend the university's efforts and undo months of changes. But S.B. 1 is not a light switch that can be flipped off. The university spent months implementing S.B. 1, and it would take just as long to reverse it. Put another way, Plaintiff's long delay in seeking emergency relief has made emergency relief impossible to grant. If the university's implementation of S.B. 1 truly harmed Plaintiff irreparably, he would not have waited ten months to sue.

### B. The remaining equitable factors disfavor emergency relief.

As set forth above, granting a TRO here would harm Defendants and Miami University, who would be forced to unwind months of changes made in reliance on S.B. 1. But a TRO would also injure the State of Ohio and the public. "Ohio's interests will suffer if the Court takes away the General Assembly's prerogative" to promote equality on public college campuses, and this

Court should "not intrude upon the Ohio legislature's prerogative lightly." *Libertarian Party of Ohio v. Husted*, No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 49841, at *35 (S.D. Ohio Mar. 19, 2014). Further, Plaintiff's requested relief would harm the public interest. As a general matter, it is "in the public interest that [this Court] give effect to the will of the people by enforcing the laws . . . their representatives enact." *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020).

**IV.     Plaintiff has not shown a strong likelihood of success on the merits of his claims.**

Because Plaintiff fails to show irreparable harm decidedly outweighing the harm to Defendants if a TRO issues, Plaintiff must do more than raise "serious questions going to the merits." *Touray v. Lynch*, No. 1:25-cv-683, 2025 U.S. Dist. LEXIS 193205, at *6 (S.D. Ohio Sept. 30, 2025). Rather, Plaintiff must demonstrate a "high likelihood of success on the merits" to qualify for a TRO. *Id*. But as set forth below, Plaintiff does not do so. Jurisdictional defects plainly bar some claims. Plaintiff fails to plausibly allege sufficient facts supporting other claims. And still other claims seek novel extensions of First Amendment doctrines. No claim articulated by Plaintiff demonstrates a high likelihood of success on the existing record. The Court should therefore deny the TRO and allow the parties to develop the facts and the law in the normal course.

**A.     Plaintiff is unlikely to succeed on his constitutional claims.**

Plaintiff asserts due process, equal protection, vagueness, retaliation, and freedom of speech claims under the First and Fourteenth Amendments. All are unlikely to succeed on the merits.

***First Amendment claims.*** Begin with Plaintiff's First Amendment claims. Generally, Plaintiff advances two First Amendment theories. First, Counts I and III of the complaint proceed under a public-forum theory, alleging that the discontinued "faculty-led service committees, faculty professional development programs, offices, student support centers, career fairs,

networking events, [and] gatherings of educational programs" were "designated public forums" that were impermissibly denied funding and eliminated based on content or viewpoint. Compl. ¶¶ 177–88, 196–202, Doc. 1 at PageID 25–26, 28. Next, Count II alleges that the discontinuation of those programs restricts Plaintiff's speech as an individual by interfering with his academic freedom. Compl. ¶¶ 189–95, Doc. 1 at PageID 26–27. Plaintiff's First Amendment claims lack merit under either theory.

A general, threshold point: Plaintiff's First Amendment claims would require this Court to extend traditional campus-speech doctrines. This case does not involve student speech. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 834–35 (1995). Nor does the complaint allege a threat of discipline that might chill a professor's curricular speech. *See Sweezy v. New Hampshire*, 354 U.S. 234, 249–50 (1957). Indeed, given that S.B. 1 prohibits no "classroom instruction, discussion, or debate, so long as faculty members allow students to express intellectual diversity," Ohio Rev. Code § 3345.0217(D)(1), this case does not involve curricular speech at all. Instead, Plaintiff asks the Court to hold that the eliminated programs "operate[] like a one-way ratchet": in other words, to hold that once the University created them they became "imbued with constitutional protections and could not be restricted." *See Interpipe Contr., Inc. v. Becerra*, 898 F.3d 879, 898–99 (9th Cir. 2018); *see also Ohio Democratic Party v. Husted*, 834 F.3d 620, 623 (6th Cir. 2016) (rejecting the one-way-ratchet theory of constitutional litigation). That is not the case, and the Court should reject Plaintiff's request that it expand the reach of the campus-speech cases—especially on a motion for a TRO of doubtful urgency.

Consider, for example, the elimination of school-sponsored DEI programs. No forum was created when the organizations were established and funded; instead, that was "the University's own speech." *See Rosenberger*, 515 U.S. at 834–35. In contrast, *Rosenberger* addressed student-

led organizations "strictly independent of the University" by written agreement. *Id.* at 849. Such groups were "not the University's agents, [] not subject to its control, and [] not its responsibility," and the University disclaimed any approval of their goals or activities. *Id.* at 824, 834–35. Because of this separation, the organization's speech was its own despite University funding. In contrast, Plaintiff never alleges that the dissolved organizations here were independent from the University. Accordingly, *Rosenberger* does not apply.

Consider next Plaintiff's invocation of the concept of academic freedom. Here, Plaintiff misses the mark because "[i]t is the educational institution that has a right to academic freedom, not the individual teacher." *Borden v. Sch. Dist.*, 523 F.3d 153, 172 n.14 (3d Cir. 2008). The concept implicates "[t]he freedom of a university to make its own judgments as to education." *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 312 (1978) (opinion of Powell, J.). It "does not warrant judicial intrusion upon an educational institution's decisions," *Evans-Marshall v. Bd. of Educ. of the Tipp City Exempted Village School Dist.*, 624 F.3d 332, 344 (6th Cir. 2010), and instead requires "deference" to those decisions, *Grutter v. Bollinger*, 539 U.S. 306, 328 (2003). Professors at a public university, on the other hand, do not enjoy First Amendment protections when making statements pursuant to their official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Although "the First Amendment protects the free-speech rights of professors when they are teaching," the general rule in *Garcetti* applies outside the classroom. *Meriwether v. Hartop*, 992 F.3d 492, 505 (6th Cir. 2021).

Because Plaintiff has not alleged any interference with his teaching- or scholarship-related speech, *Garcetti* bars his claims. There is no allegation in the complaint that Defendants have prevented Plaintiff from discussing—whether in the classroom or at an informal lunch with students—anything at all. Indeed, by its plain terms S.B. 1 does not prohibit "faculty or students

13

from classroom instruction, discussion, or debate, so long as faculty members allow students to express intellectual diversity." Ohio Rev. Code § 3345.0217(D)(1). In other words, S.B. 1 protects all of Plaintiff's First Amendment rights to academic freedom. Plaintiff seeks to extend the academic-freedom exception to *Garcetti* to all school-sponsored programs on campus. A TRO is not the place for that kind of doctrinal extension.

*Retaliation claim.* Plaintiff's retaliation claim fails as well. A plaintiff asserting a First Amendment retaliation claim must allege that "each Defendant took an adverse action against him 'motivated at least in part' by his protected speech." *Josephson v. Ganzel*, 115 F.4th 771, 787 (6th Cir. 2024) (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)). An adverse action is one that "would chill or silence a person of ordinary firmness from future First Amendment activities." *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (quotation omitted). Plaintiff alleges he was retaliated against for protesting the elimination of the DEI programs and organizations at issue. Compl. ¶¶ 249–50, Doc. 1 at PageID 35. But Plaintiff does not identify any adverse action taken against him. He has not been disciplined, reprimanded, received poor reviews, or suffered any other adverse employment consequence. Nor does he plausibly allege how the elimination of these programs chills him from protesting their elimination or advocating for DEI in the future.

*Due process claim.* Equally unavailing are Plaintiff's due process arguments. Plaintiff fails to state a cognizable substantive due process claim because he has not alleged he "has been deprived of a particular constitutional guarantee, or [] that the government has acted in a way that 'shock[s] the conscience.'" *Id.* A valid substantive due process claim requires a "careful description" of the fundamental right or liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). This specificity requirement exists because substantive due process affords heightened protection for "fundamental" rights. *Id.* at 720. Substantive due process "only 'protects those

14

fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Beydoun v. Sessions*, 871 F.3d 459, 466 (6th Cir. 2017) (quoting *Glucksberg*, 521 U.S. at 720–21). Plaintiff does not allege an infringement on any right held to be among that narrow class.

With respect to his procedural due process claim, he again fails to allege a protected liberty or property interest that was interfered with and supplies no authority suggesting he has such an interest in an "internal[] investigation" of his racial discrimination claim. *See* Compl. ¶ 212, Doc. 1 at PageID 30. This is also fatal to Plaintiff's vagueness claim. Vagueness claims are ultimately due process claims, and thus a Plaintiff must allege the deprivation of a protected liberty or property interest. *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (plurality) (holding a statute may be void for vagueness if it "fails to establish standards . . . that are sufficient to guard against the arbitrary deprivation of liberty interests"). Plaintiff's failure to do so is fatal to his vagueness claim.

***Equal protection claim.*** Finally, Plaintiff's equal protection claim fares no better. "[M]ere disparate impact is not sufficient to state an equal protection claim under § 1983." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) (citations omitted). To state a valid claim under the Equal Protection Clause, a plaintiff must "allege sufficient facts to show that a state actor intentionally discriminated against [her] because of membership in a protected class." *See Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008). Plaintiff does not allege intentional discrimination. Indeed, in an exhibit to his complaint, he professes his belief that the decisions he complains of were *not* intentionally discriminatory. Compl. Ex. 13, Doc. 1-1 at PageID 81. This dooms his equal protection claim.

Accordingly, Plaintiff has failed to allege any constitutional claims with a strong likelihood of success on the merits.

### B. Plaintiff is unlikely to succeed on his Title VII claims.

Nor is Plaintiff likely to succeed on his claims under Title VII because he has failed to first exhaust all his administrative remedies. "The exhaustion of administrative remedies is a condition precedent to a Title VII action." *Williams v. Northwest Airlines*, 53 Fed. Appx. 350, 351–52 (6th Cir. 2002) (citing *Zipes v. TWA*, 455 U.S. 385, 392–98 (1982)). In the context of Title VII discrimination claims, the appropriate administrative remedy is for Plaintiff to file a charge with the EEOC and receive a right-to-sue letter. *See Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018). "Only after these procedures have been exhausted and the plaintiff has obtained a 'right to sue' letter from the EEOC may [a plaintiff] bring a Title VII action in court." *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989) (citation omitted). Plaintiff has not alleged that he filed a charge with the EEOC or received a right-to-sue letter. Since Plaintiff has failed to allege exhaustion of his administrative remedies, he has failed to meet a condition precedent for a Title VII action.

### C. Plaintiff's state law claim is unlikely to succeed.

Plaintiff's state law promissory estoppel claim is barred by the Eleventh Amendment. Federal courts do not have jurisdiction to require state officials to conform their conduct to state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21 (1984). The Board of Trustees have not waived immunity or consented to this suit. Therefore, this Court lacks subject-matter jurisdiction over Plaintiff's state law claim, and it is thus unlikely to succeed on the merits.

## CONCLUSION

For these reasons, Defendants respectfully request that this Court deny Plaintiff's motion for temporary restraining order.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
**Counsel of Record*
Assistant Attorney General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
Ann.Yackshw@OhioAGO.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, a copy of the foregoing Defendants' Oppositions to Plaintiff's Motion for Temporary Restraining Order was filed electronically. A copy of this filing was sent via U.S. mail to:

Darryl B. Rice
4649 Oakland Ct.
Mason, OH 45040

*Plaintiff, pro se*

                                            */s/ Ann Yackshaw*
                                            ANN YACKSHAW (0090623)*
                                            Assistant Attorney General