UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **DARRYL B. RICE** | ) | **Case No.: 1:26-cv-00155-MWM-KLL** |
| | ) | |
| **Plaintiff,** | ) | **Judge Matthew W. McFarland** |
| | ) | |
| **-v-** | ) | |
| | ) | |
| **MARY SCHELL,** *et al.* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' MOTION TO DISMISS,
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56(a), Defendant Miami University Trustees Mary Schell, Deborah Feldman, Steve Anderson, Rod Robinson, Zachary Haines, Ryan D. Burgess, Elizabeth McNellie, Lisa Peterson, and Bill Ebbing (collectively the "Individual Defendants") move to dismiss all claims asserted by Plaintiff Darryl B. Rice, or in the alternative, for summary judgment in their favor on all such claims.

Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because the judicial power of the United States is limited by U.S. Const. art. III § 2 to actual "cases" and "controversies." Plaintiff fails to show Article III standing for *any* alleged claim he seeks to press. Furthermore, as explained in the attached Memorandum in Support, Plaintiff fails to state any claim upon which relief could be granted. For these reasons, the Individual Defendants respectfully request that the Court grant this Motion and dismiss Plaintiff's claims against them with prejudice.

1

In the alternative, the Individual Defendants are entitled to a summary judgment in their favor because the deposition testimony of Plaintiff demonstrates that, contrary to multiple allegations in his Complaint, he has not been harmed or threatened with harm, and that his fears of future possible harm simply will not support the injunctive relief he seeks.

Respectfully submitted,

 */s/ Richard L. Creighton, Jr.*
Richard L. Creighton, Jr. (0021806)
Heather V. Van Hull (0104564)
Christo V. Fosse (0106079)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, OH  45202
Telephone: (513) 579-6400
Fax: (513) 579-6457
rcreighton@kmklaw.com
hvanhull@kmklaw.com
cfosse@kmklaw.com

*Attorneys for Individual Defendants*

2

**TABLE OF CONTENTS**

**Page**

SUMMARY OF PRINCIPAL ARGUMENTS ……………………………….    5

MEMORANDUM IN SUPPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

II. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

III. LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

IV. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

  A. First Amendment Violations – Freedom of Assembly, Freedom of Speech,    15
  Viewpoint Neutrality in Funding Decisions

      i.    Plaintiff's First Amendment claims should be dismissed in their entirety    16
            pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff fails to show
            Article III standing for any of these claims.

      ii.   Dismissal of Plaintiff's First Amendment claims is appropriate because    19
            Plaintiff cannot plausibly argue or claim that he has been deprived of a
            right secured by the Constitution.

  B. Fourteenth Amendment Violations – Equal Protection (Equality of Opportunity),    23
  Due Process, Void-for-Vagueness Doctrine

      i.    Plaintiff's claims for violations of the Fourteenth Amendment should    23
            similarly be dismissed in their entirety pursuant to Fed. R. Civ. P.
            12(b)(1) because Plaintiff fails to show Article III standing for any of
            these claims.

      ii.   Alternatively, Plaintiff's Fourteenth Amendment claims should be    25
            dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he fails to state
            a claim for which relief can be granted.

  C. Disparate Impact (Title VII) and Retaliation (First Amendment and Title VII)    28

      i.    Plaintiff's First Amendment Retaliation claim should be dismissed under    29
            Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because he has not identified a
            "concrete and particularized" or "actual or imminent" injury.

ii.     Plaintiff's Title VII Disparate Impact and Retaliation claims should be dismissed because he failed to exhaust all administrative remedies.    30

iii.    Plaintiff's Title VII Retaliation claim fails because he does not identify an adverse employment action taken against him.    30

D. Promissory Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    31

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    34

## SUMMARY OF PRINCIPAL ARGUMENTS

Pursuant to Section III.A.4 of the Court's Standing Order Regarding Procedures in Civil Cases, Defendants respectfully submit the following summary of the principal arguments and primary authorities relied upon in this Memorandum in Support of their Motion to Dismiss, or in the Alternative for Summary Judgment.

### I. Plaintiff Lacks Article III Standing

Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because he fails to demonstrate Article III standing for any claim he seeks to press. To establish standing, a plaintiff must show an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lucas v. Rapier, et al.*, No. 1:25-cv-563, 2026 WL 1010045, at \*4 (S.D. Ohio Feb. 3, 2026). Plaintiff's own deposition testimony establishes that he has suffered no concrete harm: he has not been subjected to any disciplinary action, his salary and tenure remain unchanged, he can still speak freely on DEI-related topics both inside and outside the classroom, no one has restricted his ability to research or teach DEI-related topics, and no one has threatened adverse action against him. Rice Dep. 81:22-82:25; 157:17-158:12; 192:8-20; 199:10-25, Doc. 27 at PageID 674-75, 750-51, 785, 792. His alleged injuries are purely conjectural or hypothetical and insufficient to support Article III standing. *See Deters v. Barrett*, No. 1:25-cv-640, 2026 WL 157676, at \*5 (S.D. Ohio Jan. 16, 2026).

### II. Plaintiff's First Amendment Claims Fail on the Merits (Counts One, Two, and Three)

Even if Plaintiff could establish Article III standing, his First Amendment claims fail because the discontinued programs, offices, committees, and events are government speech channels not subject to First Amendment protections. *See, e.g., Shurtleff v. City of Bos., Mass.*, 596 U.S. 243 (2022); *Brown v. Yost*, 133 F.4th 725 (6th Cir. 2025). Applying the Supreme Court's

three-factor test for government speech—(1) "the history of the expression at issue," (2) "the public's likely perception as to who (the government or a private person) is speaking," and (3) "the extent to which the government has actively shaped or controlled the expression"—it is indisputable that *all* the "gatherings, meetings, and forums" Plaintiff identifies in his Complaint are government speech channels which are "immune from First Amendment review." *Brown*, 133 F.4th at 734 (citations omitted). Because the First Amendment does not "prevent the government from declining to express a view" or prohibit the government from deciding "what to say and what not to say," Plaintiff cannot establish a deprivation of any constitutional right. *Shurtleff*, 596 U.S. at 251. A public university has the right to discontinue or eliminate programs when it determines they are no longer consistent with its mission.

### III. Plaintiff's Fourteenth Amendment Claims Fail (Counts Four, Five, and Six)

Plaintiff's Equal Protection claim fails because he does not allege intentional discrimination. *See Solly v. Hoying, et al.*, No. 2:24-cv-1249, 2026 WL 1026794, at *2 (S.D. Ohio Apr. 16, 2026). Plaintiff admits in his Complaint and deposition testimony that the Individual Defendants' decisions to discontinue various offices were *not* intentionally discriminatory and that any decisions to terminate committees that he served on were not directed at him personally. Compl. Ex. 13, Doc. 1-1 at PageID 79-82; Rice Dep. 200:21-201:3, Doc. 27 at PageID 793-94. His Due Process claims fail because he cannot identify a protected liberty or property interest that was infringed. *See Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012). Plaintiff's Void-for-Vagueness claim likewise fails because it depends on the same missing predicate—a deprivation of a protected liberty or property interest. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999).

**IV. Plaintiff's Disparate Impact and Retaliation Claims Fail (Counts Seven and Eight)**

Plaintiff's First Amendment Retaliation claim fails because he cannot identify any adverse action that would "chill or silence a person of ordinary firmness from future First Amendment activities." *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014).  Plaintiff admits he remains free to speak about, teach, and research DEI-related topics.  *See* Rice Dep. at 21:12-14, 19-21; 81:8-82:25; 109:19-23, Doc. 27 at PageID 614, 674-75, 702.  Plaintiff's Title VII Disparate Impact and Retaliation claims should be dismissed because he did not exhaust his administrative remedies— a condition precedent to any Title VII action.  *Williams v. Northwest Airlines*, 53 Fed.Appx. 350, 351-52 (6th Cir. 2002).  He has not alleged that he filed a charge with the EEOC or received a right-to-sue letter. *See Peeples v. City of Detroit*, 891 F.3d 622, 630 (2018).  Even if properly before this Court, Plaintiff's Title VII Retaliation claim fails because he identifies no "materially adverse change in the terms and conditions of [his] employment." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004).

**V. Plaintiff's Promissory Estoppel Claim Is Barred (Count Nine)**

Plaintiff's state-law promissory estoppel claim is barred by the Eleventh Amendment, which prohibits federal courts from requiring state officials to conform their conduct to state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120-21 (1984). Even if not jurisdictionally barred, the claim fails because Plaintiff cannot identify a "clear, unambiguous promise." *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio Ct. App. 2008). Nor can Plaintiff show injury—his tenure is intact, his professorship is unaffected, and his decision not to pursue the Fulbright opportunity was his own. Rice Dep. 158:4-10; 176:14-180:24, Doc. 27 at PageID 751, 769-73.

**MEMORANDUM IN SUPPORT**

## I.     INTRODUCTION

This is not a case about academic freedom.  It is not a case about Miami University placing restrictions on what Plaintiff can teach or discuss with students in his classes or with other faculty members.  It is not a case about Miami University forcing or requiring Plaintiff to teach or discuss subjects, concepts or ideas with which he disagrees.  It is not a case about Miami University controlling what Plaintiff researches or writes about.  It is not a case about Miami University preventing Plaintiff from expressing his views on any subject, no matter how controversial or non-controversial, on the university campus or elsewhere.  It is not a case about Miami University dictating which professional organizations or academic groups to which Plaintiff can belong.  It is not a case about Miami University contemplating, threatening, investigating or undertaking disciplinary actions against Plaintiff or preventing him from advancing from the position of tenured Associate Professor to a tenured Full Professor.  And finally, it is not a case about Miami University attempting to "enforce" state statutes against Plaintiff.

The main thrust of Plaintiff's Complaint is that certain administrative changes Miami University implemented before and after Ohio Senate Bill 1 ("Advance Ohio Higher Education Act," codified at Ohio Revised Code §§3345.0217 and 3345.88) (hereinafter "SB 1") became effective in June 2025 deprived him of his constitutional rights, harmed his career and hurt his chances of advancement.  He is wrong—they have not.  Plaintiff's right to speak freely about the subjects and issues he deems important has not been infringed by the administrative changes; his right to assemble in public spaces on the Miami University campus has not been abridged; he has not been deprived of opportunities in violation of the 14th Amendment; his due process rights have

8

not been interfered with in any respect; and lastly, he is in the wrong court at the wrong time to assert Title VII and Section 1983 claims or his state law claims for promissory estoppel.

What this case *is* about is a series of administrative changes Miami University implemented in order to comply with the clear and unambiguous requirements of SB 1.[1] It is about the fundamental rights that every one of Ohio's 14 public universities have to determine how they will allocate limited resources; what policies, departments and programs they will establish, maintain or terminate; how and at what level they will fund policies, departments and programs; what types of training they will require for faculty, staff and students; what criteria and considerations they will use in their hiring practices; and how they will remain in compliance with the state laws and regulations that govern them.

## II.    BACKGROUND

Plaintiff, Dr. Darryl B. Rice, is a tenured Associate Professor of Management in the Farmer School of Business at Miami University. Compl. ¶¶ 4, 28, Doc. 1 at PageID 2, 5. Since his appointment to the position in July 2024, Plaintiff has also served as the Richard T. Farmer Associate Professor, a nonrenewable, three-year term endowed position funded by the Farmer Family Foundation. Compl. ¶ 38, Doc. 1 at PageID 6; Compl. Ex. 1, Doc. 1-1 at PageID 44-45. Plaintiff teaches Diversity and Cross-Cultural Management courses, conducts research on Diversity, Equity, and Inclusion (hereinafter "DEI") topics, and, until the passage of SB 1, took an active role in a number of Miami University's institution-sponsored DEI programs. *See* Compl. ¶¶ 18, 48, 68, 70-71, 75, 77, 79, 81, Doc. 1 at PageID 4, 7, 10-11.

The passage of SB 1 fundamentally reworked the presence of DEI on Ohio's public university campuses and, as could be expected, impacted Plaintiff's role at Miami University.

---

[1] For the convenience of the Court, complete copies of these statutes are attached hereto as Exhibits A & B.

9

Among other changes to higher education, SB 1 requires the trustees of every Ohio public university to adopt, and the university to enforce, policies that prohibit (1) "[a]ny orientation or training course regarding diversity, equity, and inclusion"; (2) "[t]he continuation of existing diversity, equity, and inclusion offices or departments"; (3) "[e]stablishing new diversity, equity, and inclusion offices or departments"; and (4) "[t]he establishment of any new institutional scholarships that use diversity, equity, and inclusion in any manner."  R.C. 3345.0217(B)(1)(a) (Ex. A).  Additionally, SB 1 prohibits Ohio's public universities from replacing "any orientation, training, office, or position designated for the purpose of diversity, equity, and inclusion that is prohibited under this division with an orientation, training, office, or position under a different designation that serves the same or similar purposes, or that uses the same or similar means."  R.C. 3345.0217(B)(1)(b) (Ex. A).  While SB 1 generally prohibits university-sponsored DEI training, offices, departments, and programs, *it does not prohibit instruction on or discussion of DEI topics, or otherwise inhibit academic freedom.*

SB 1 did not become law in a vacuum.  Although SB 1 did not become effective until June 27, 2025, it was introduced in January 2025, passed by the Ohio Senate in February 2025, passed by the Ohio House in March 2025, and signed into law in March 2025.  *See* Compl. ¶¶ 92-93, Doc. 1 at PageID 12.  Many of SB 1's provisions had been included in the law's legislative predecessor, Senate Bill 83 ("SB 83"), which was introduced during the 2023-2024 legislative session and approved by the Ohio Senate in May 2023.  SB 83 did not pass in the Ohio House and never became law.  However, the possible widespread implications of anti-DEI legislation was a subject of much discussion, both at Miami University, and at the other 13 Ohio public universities since SB 83's introduction in March 2023.  It was no secret what was coming and what operational changes would have to be made.

SB 1 had tight deadlines.  Ohio's public universities were required to make the above-described changes within ninety days of R.C. 3345.0217's effective date.  R.C. 3345.0217(B) (Ex. A).  To meet these deadlines, Miami University began implementing the sweeping changes required by SB 1 on a rolling basis once it was signed into law.  In anticipation of the law's effective date in late June 2025, the University began winding down its DEI programming in April 2025.  *See* Compl. ¶ 103, Doc. 1 at PageID 13-14.  As required by the plain-language of SB 1, the University "discontinued faculty-led committees, academic conferences, newsletters, listservs, faculty professional development programs, career fairs, student professional development opportunities, offices that perform knowledge dissemination and transmission activities, and student support centers" that had a focus on DEI, some of which Plaintiff was involved in and "used to fulfil[l] his contractually obligated service requirements."  Compl. ¶ 61, Doc. 1 at PageID 9.

Plaintiff strenuously and publicly opposed SB 1's implementation at Miami University through all available University channels.  For example, on April 25, 2025, he filed a racial discrimination claim with the University's Office of Equal Employment and Opportunity in response to the University's April 18th announcement of the discontinuation of the Office of Transformational and Inclusive Excellence, the Center for Student Diversity and Inclusion, and Miami Regional's Center for DEI, alleging that the closure of the three centers disproportionately impacted minority staff members.  Compl. ¶¶ 103-104, Doc. 1 at PageID 13-14; Compl. Exs. 13,14, Doc. 1-1 at PageID 80-84.  He voiced his concern that "as an institution, we are using race as a screening mechanism for DEI programs."  Compl. ¶ 105, Doc. 1 at PageID 14.  In September 2025, Plaintiff filed a complaint under the University's free-speech policy with the EthicsPoint hotline, alleging the Board of Trustees had violated his free speech by engaging in "systemic

11

suppression of diversity, equity, and inclusion on campus." Compl. ¶¶ 135-136, Doc. 1 at PageID 19; Compl. Ex. 28, Doc. 1-1 at PageID 136. In addition, Plaintiff sent numerous emails to divisional, departmental, and University leaders, the Chair of the Department of Management, the Associate Provost, and the University's Vice President & General Counsel regarding his concerns about the Individual Defendants' implementation of SB 1 and discontinuation of various DEI offices, committees, conferences, training, and programming. Compl. ¶¶ 100-02, 104-05, 111, 125, 127, 139-40, Doc. 1 at PageID 13-15, 17-19; Compl. Exs. 9, 10, 11, 13, 25, 26, 29, Doc. 1-1 at PageID 68-69, 71-72, 74-75, 80-82, 125-27, 129-30, 138-40. Finally, after delaying for many months, on February 12, 2026 Plaintiff brought his challenge of the Individual Defendants' implementation of SB 1 and cancellation of DEI offices, committees, programs, and activities to this Court by filing his *pro se* Verified Complaint for Injunctive and Declaratory Relief.

Plaintiff's Complaint sets forth nine causes of action – (1) Violation of First Amendment Right to Freedom of Assembly, (2) Violation of First Amendment Right to Freedom of Speech, (3) Violation of First Amendment Right to Viewpoint Neutrality, (4) Violation of Fourteenth Amendment Right to Equal Opportunity, (5) Violation of Fourteenth Amendment Right to Due Process, (6) Violation of Fourteenth Amendment Right on Void-For-Vagueness, (7) Disparate Impact, (8) Retaliation, and (9) Promissory Estoppel. However, for the reasons stated below, none of Plaintiff's nine causes of action can survive a motion to dismiss.

Plaintiff named nine of the fifteen then-current Miami University Trustees as defendants.[2] He correctly identified the nine Defendants as "the vote-casting" members of the Board.[3] Miami

---

[2] Miami University is authorized to have seventeen Trustees. At present, the Board is two trustees short of a full complement.

[3] Subsequent to the filing of Plaintiff's Complaint, Defendant Trustee Rod Robinson retired and has been replaced by Trustee William Darling.

University is governed by the entire 17-member Board of Trustees, but only nine are deemed "vote-casting" members.  The Board exercises ultimate institutional authority over Miami University by setting policy, approving budgets, overseeing the University's financial and physical assets, hiring and evaluating the president, and ensuring that the University fulfills its statutory and public mission.  The Trustees govern at the level of strategy, compliance, and accountability, not operations or day-to-day administration.[4]

## III.    LEGAL STANDARD

"To survive a motion to dismiss under 12(b)(1), a plaintiff must show Article III standing." *Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.*, 711 F.Supp.3d 686, 690 (W.D. Mich. 2024) (citing *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 835 F. App'x 18, 22-23 (6th Cir. 2020)).  Article III standing "is a threshold jurisdictional issue that must be addressed before reaching the merits of a case."  *Deters v. Barrett*, No. 1:25-cv-640, 2026 WL 157676, at *5 (S.D. Ohio Jan. 16, 2026) (citation omitted).  To establish Article III standing, a plaintiff must show "(1) an injury in fact that is (2) fairly traceable to the challenged conduct of the defendant and is (3) likely to be redressed by a favorable judicial decision."  *Id.* (quoting *Kitchen v. Whitmer*, 106 F.4th 525, 534 (6th Cir. 2024)) (internal quotation marks and citation omitted).  In other words, "[a] party invoking the power of a federal court must have a 'personal stake' in the case."  *Id.* (citing *In re East Palestine Train Derailment*, No. 24-4086, 2025 WL 3280837, at *3 (6th Cir. Nov. 25, 2025)).  A court may grant a motion to dismiss under Fed. R. Civ. P. 12(b)(1) when, after "accept[ing] as

---

[4] The Individual Defendants interpret Plaintiff's Complaint as asserting claims against them only in their official capacities, and only for prospective injunctive relief under the *Ex Parte Young* exception to Eleventh Amendment immunity.  To the extent that Plaintiff asserts, or ever seeks to assert, claims against the Individual Defendants in their personal capacities, they assert the defense of qualified immunity.  Furthermore, to the extent Plaintiff asserts, or ever seeks to assert, claims against Miami University as an institution, the University asserts the defense of sovereign immunity under the Eleventh Amendment.  *See Dehen v. Ohio State Univ.*, No. 2:23-cv-517, 2023 WL 4842706, at *2 (S.D. Ohio June 5, 2023) (concluding OSU is properly considered an arm of the State for purposes of Eleventh Amendment immunity).

13

true all material allegations of the complaint and . . . constru[ing] the complaint in favor of the complaining party[,]" the plaintiff fails to "demonstrate standing for each claim he seeks to press[.]" *Mich. Ass'n of Pub. Sch. Acads.*, 711 F.Supp.3d at 690-91 (quoting *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015) and *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Additionally, a complaint "must present a plausible claim based on sufficient factual allegations" in order to survive a motion to dismiss. *Fisher v. Dodson*, 451 F. App'x 500, 501 (6th Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests whether the complaint states a cognizable legal claim. A court's task on a Rule 12(b)(6) motion is to "assess[] the legal feasibility of the complaint." *Gudenas v. Cervenik*, No. 1:09CV2169, 2010 WL 987699, at * 5 (N.D. Ohio Feb. 22, 2010) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). A court should grant a motion to dismiss when "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001) (quotations omitted).

"When evaluating whether a plaintiff has stated a claim [under Fed. R. Civ. P. 12(b)(6)], the court cannot consider 'matters outside the pleadings.'" *Berk v. Choy*, 146 S.Ct. 546, 553 (2026) (citing Fed. R. Civ. P. 12(d)). However, "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Summary judgment is appropriate under Rule 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered "material" "only if its resolution might affect the outcome of the suit under the governing

14

substantive law." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Nor is "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" sufficient. *Id.* at 252. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## IV.     ARGUMENT

### A. First Amendment Violations – Freedom of Assembly, Freedom of Speech, Viewpoint Neutrality in Funding Decisions

Plaintiff advances three interrelated First Amendment claims under 42 U.S.C. § 1983. Plaintiff asserts that the Individual Defendants violated his First Amendment right to freedom of assembly and freedom of speech by discontinuing "Plaintiff's multiple gatherings, meetings, and forums in which he organized and/or attended[.]" Compl. ¶ 186, Doc. 1 at PageID 26. Specifically, the Individual Defendants discontinued (1) the Farmer School of Business DEI Service Committee (the "FSB DEI Service Committee"), which Plaintiff co-chaired; (2) the Department of Management DEI Service Committee, which Plaintiff served on as a member; (3) the Across The Divide conference, which was an outlet for Plaintiff's research; (4) the Office of Transformational and Inclusive Excellence newsletter, which highlighted and disseminated Plaintiff's research; (5) the Inclusive Excellence Faculty Fellows program, which was a professional development opportunity for Plaintiff; (6) the DEI Mastermind program, at which Plaintiff was a regular presenter; (7) the Diversity and Inclusion Networking Event and Keys to Career: DEI Professional Development Day, which were networking opportunities for Plaintiff; and (8) the Office of Transformational and Inclusive Excellence, the Center for Student Diversity and Inclusion, and

15

Miami Regional's Center for DEI, which hosted or supported multiple initiatives and programs in which Plaintiff participated.  Compl. ¶¶ 68, 70-71, 73, 75, 77, 79, 81, 83, 88, 91, Doc. 1 at PageID 10-12.  Plaintiff contends the Individual Defendants' discontinuation of these "gatherings, meetings, and forums" not only impacted his freedom to assemble, but also restricted his "speech, all germane and relevant to his area of expertise[.]" Compl. ¶¶ 186, 193, Doc. 1 at PageID 26-27. Plaintiff maintains that the decision to defund or discontinue these "gatherings, meetings, and forums," and the University's institutional memberships in programs such as the PhD Project, "constituted adverse action against him" that "was motivated in part by content and viewpoint associated with various faculty-led service committees, faculty professional development programs, career fairs, networking events, offices, [and] student support centers."  Compl. ¶¶ 186-87, Doc. 1 at PageID 26; *see also* Compl. ¶¶ 193-94, 200-01, Doc. 1 at PageID 27-28.

> i. **Plaintiff's First Amendment claims should be dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff fails to show Article III standing for *any* of these claims.**

Even taking all of the factual allegations in Plaintiff's Complaint in relation to his First Amendment claims as true, Plaintiff fails to show he has suffered *any* injury as a result of the defunding or discontinuation of the above-listed gatherings, meetings, programs, or forums.  To establish Article III standing, Plaintiff must show he suffered an injury which is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Lucas v. Rapier, et al.*, No. 1:25-cv-563, 2026 WL 1010045, at *4 (S.D. Ohio Feb. 3, 2026) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).  "Particularized injury is injury that is personal to the plaintiff" while "[c]oncrete injury is injury that 'actually exist[s]' – though it need not be tangible."  *Id.* (quoting *Spokeo, Inc.* at 339-40).  In relation to allegations of constitutional violations, "[i]t is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact[,]"

16

however, a "litigant alleging chill must still establish that a concrete harm . . . occurred or is imminent."  *Id.* at *5 (quoting *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012) and *Morrison v. Bd. of Educ. of Boyd Cnty.*, 521 F.3d 602, 610 (6th Cir. 2008)).  Here, any injury Plaintiff alleges in relation to his First Amendment claims is, at best, conjectural or hypothetical.

In his Complaint, Plaintiff generally alleges the Individual Defendants' "discontinuation of Plaintiff's multiple gatherings, meetings, and forums . . . which he organized and/or attended," "restriction of Plaintiff's speech, all germane and relevant to his area of expertise, at multiple gatherings and forums he organized and/or attended," and "preemptive and arbitrary discontinuation of university funding to [various offices, centers, and programs], all germane and relevant to Plaintiff's field of study and successful completion of his work obligations" chilled his constitutional freedoms of assembly and speech.  Compl. ¶¶ 186, 193, 200, Doc. 1 at PageID 26-28.  However, nowhere in his Complaint does Plaintiff allege that the Individual Defendants or anyone at the University punished him, took any action against him, or otherwise attempted to prohibit him from speaking about, discussing, or teaching DEI-related topics or meeting with students, faculty, or other persons outside the University to discuss DEI-related topics.  Nor does Plaintiff allege that the Individual Defendants or anyone at the University has *threatened* to punish him or take any action against him for speaking about, discussing, or teaching DEI-related topics or meeting with others to discuss DEI-related topics.

In fact, in his deposition, Plaintiff *admitted* that he has not suffered a "concrete harm" as a result of the defunding or discontinuation of these gatherings, meetings, programs, or forums.[5]  He testified he has not been subject to any formal disciplinary actions, write-ups, reprimands, or any

---

[5] The Individual Defendants conducted Plaintiff's deposition on April 7, 2026.  The full transcript of Plaintiff's deposition has been filed with the Court (Doc. 27).  The cited excerpts of Plaintiff's deposition testimony are attached hereto as **Exhibit C** for the convenience of the Court.

administrative actions whatsoever from the Individual Defendants or anyone at the University since the events described in his Complaint, nor has his salary, compensation, tenure status, or Richard T. Farmer Associate Professorship status been impacted in any way.  Rice Dep. 157:17-158:12; 199:10-25, Doc. 27 at PageID 750-51, 792.  He confirmed that neither the Individual Defendants nor anyone at the University has interfered with his teaching, researching, or publishing, restricted him in any way from discussing DEI-related topics or any other issues, or prohibited him from attending or participating in DEI-related conferences.  Rice Dep. 21:19-21; 64:9-68:20; 81:22-82:25; 85:9-13; 109:19-23; 192:8-20, Doc. 27 at PageID 614, 657-61, 674-75, 678, 702, 785.  Furthermore, he conceded that he has no empirical evidence that his professional reputation has been harmed and cannot identify any instances in which a person or organization thought lesser of him because of the Individual Defendants' actions.  Rice Dep. 217:20-222:6; 225:21-228:7, Doc. 27 at PageID 810-15, 818-21.

Plaintiff similarly confirmed he does not believe a concrete harm to be imminent.  He testified that neither the Individual Defendants nor anyone at the University has threatened to bring a disciplinary action or termination proceeding against him.  Rice Dep. 200:7-11, Doc. 27 at PageID 793.  Although Plaintiff testified that he is worried about his continued ability to fulfill the service obligations required of his position and for promotion as a result of the Individual Defendants' discontinuation of various programs or committees, any such injuries are purely conjectural or hypothetical.  No one at the University has warned him that he is falling short in meeting his service requirements, suggested to him that his previous work with disbanded committees, projects or programs will not count towards his service requirements, or suggested that his future annual evaluations will be negatively impacted by the Individual Defendants' implementation of SB 1 or the discontinuation of DEI programs, departments, or offices.  Rice

18

Dep. 157:17-158:12; 196:24-197:10; 198:21-25, Doc. 27 at PageID 750-51, 789-91. Plaintiff's worry that the Individual Defendants or someone at the University *may* take action against him or that he *may* suffer reputational harm is insufficient to establish Article III standing. Therefore, this Court lacks jurisdiction over Plaintiff's First Amendment claims and Counts One, Two and Three of the Complaint should be dismissed.

### ii. Dismissal of Plaintiff's First Amendment claims is appropriate because Plaintiff cannot plausibly argue or claim that he has been deprived of a right secured by the Constitution.

"To prevail on a § 1983 claim a plaintiff must plead two elements: '(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law.'" *Jones v. Delaware Cnty. Child Support Enf't Agency*, No. 2:25-CV-1336, 2025 WL 3687424, at *4 (S.D. Ohio Dec. 19, 2025) (quoting *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008)). Here, even when taking all of the factual allegations in Plaintiff's Complaint in relation to his First Amendment claims as true, he fails to show that he has been "depriv[ed] of a right secured by the Constitution . . . ." *Id.*

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) (citations omitted). Notably, First Amendment protections do not apply to government speech as the government, including public universities, "must be able to decide what to say and *what not to say* when it states an opinion, speaks for the community, formulates policies, or implements programs." *Shurtleff v. City of Bos., Mass.*, 596 U.S. 243, 243-44 (2022) (emphasis added); *see also Walker v. Tex. Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 200, 207 (2015) ("When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says" and "[a] government is generally

19

entitled to promote a program, espouse a policy, or take a position") (citing *Pleasant Grove City v. Summum*, 555 U.S. 460, 467-68 (2009)); *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 833 (1995) (discussing the discretion universities possess in deciding matters relating to their educational mission); *Viewpoint Neutrality Now! v. Regents of Univ. of Minnesota*, 516 F. Supp. 3d 904, 918 n.21 (D. Minn. 2021) ("The Court therefore concludes that if a university uses funds (regardless of their source) to *speak* (that is, communicate its *own* message), the government-speech doctrine applies.") (emphasis in original).

"When ascertaining whether speech can be attributed to the government [or the University]—and therefore is immune from First Amendment review—the Supreme Court has instructed [lower courts] to look at (1) 'the history of the expression at issue,' (2) 'the public's likely perception as to who (the government or a private person) is speaking,' and (3) 'the extent to which the government has actively shaped or controlled the expression.'" *Brown v. Yost*, 133 F.4th 725, 734 (6th Cir. 2025) (quoting *Shurtleff*, 596 U.S. at 252). These factors collectively help determine whether the government is "transmit[ting its] own message" or "creat[ing] a forum for the expression of private speakers' views[.]" *Shurtleff*, 596 U.S. at 252.

Here, it is indisputable that the *all* the "gatherings, meetings, and forums" Plaintiff identifies in his Complaint are government speech channels which are "immune from First Amendment review." *Brown*, 133 F.4th at 734. University-formed offices, centers, and committees – such as the Office of Transformational and Inclusive Excellence, the Center for Student Diversity and Inclusion, Miami Regional's Center for DEI, the FSB DEI Service Committee, and the Department of Management DEI Service Committee – have historically been viewed as a means by which universities can enhance their ability to fulfill their mission effectively, support their research missions, support their faculties and students, and address

20

challenges facing them, their faculties, or their students.  The public tends to view university-formed offices, centers, and committees as representing the university or conveying a message on the university's behalf.  Furthermore, in this case, Miami University maintains direct control over each of the offices, centers, and committees listed in Plaintiff's Complaint.  It funds each of the offices, centers, and committees, determines what each office, center, or committee can or cannot do, and has the ultimate say regarding staffing, employment, or appointment decisions.  *See* Compl. ¶¶ 68, 70, 83, 86-91, 103, 105, 119, 131, 200, 232, 243, Doc. 1 at PageID 10-14, 16, 18, 28, 33-35; *see also* Rice Dep. 18:15-19:3; 87:3-92:24; 93:5-94:5; 116:22-118:16; 123:6-14; 126:1-6; 138:1-15; 144:22-24; 147:5-25; 201:23-202:18; 230:25-231:11, Doc. 27 at PageID 611-12, 680-87, 709-11, 716, 719, 731, 737, 740,  794-95, 823-24.

Similarly, the conferences, newsletters, programs, and events listed by Plaintiff each are unquestionably government speech channels.  The University financed the Across The Divide conference, the Office of Transformational and Inclusive Excellence newsletter, the Inclusive Excellence Faculty Fellows program, the DEI Mastermind program, the Diversity and Inclusion Networking Event, and the Keys to Career: DEI Professional Development Day.  *See* Compl. ¶¶ 71, 75, 77, 79-83, 86, 125, Doc. 1 at PageID 10-11, 17; *see also* Rice Dep. 18:7-20:20; 132:16-133:7; 144:16-24; 146:14-20; 159:14-160:10; 167:20-168:7, Doc. 27 at PageID 611-13, 725-26, 737, 739, 752-53, 760-61.  The University and its officials were responsible for the content of each of these conferences, newsletters, programs, and events.  The University and its officials determined what to publish in the Office of Transformational and Inclusive Excellence newsletter and decided who to include in the Inclusive Excellence Faculty Fellows program.  Rice Dep. 140:19-141:6; 141:12-144:1; 145:5-146:13, Doc. 27 at PageID 733-39. Any speakers or presenters at the Across The Divide conference, the DEI Mastermind program, the Diversity and Inclusion

Networking Event, and the Keys to Career: DEI Professional Development Day had to be invited to participate and/or be approved by the University and its officials. *See* Rice Dep. 128:14-133:7; 149:4-13; 168:8-14, Doc. 27 at PageID 721-26, 742, 761. The speakers or presenters at each of these conferences, programs, or events had to have the topic or content of their presentation approved by the University and its officials. *See, e.g.*, Rice Dep. 168:8-14, Doc. 27 at PageID 761. Where the conferences, programs, and events would be held, when they would be held, and who would be invited to attend was determined by the University and its officials. *See, e.g.,* Rice Dep. 135:25-136:6; 137:8-13; 145:5-147:16; 168:8-14, Doc. 27 at PageID 728-30, 738-40, 761.

Taking all of the allegations in Plaintiff's Complaint as true, Plaintiff cannot establish that the Individual Defendants deprived him of any First Amendment right—whether grounded in freedom of speech, freedom of assembly, or viewpoint neutrality—by discontinuing the meetings, forums, and gatherings identified in the Complaint. This is so for a straightforward reason: First Amendment protections do not apply to these university-administered meetings, forums, or gatherings, thus, Plaintiff's First Amendment rights cannot be violated by their discontinuation. *See Bd. of Regents of Univ. of Wisconsin Sys. v. Southworth*, 529 U.S. 217, 229 (2000) (suggesting that if "the challenged speech . . . were financed by tuition dollars and the University and its officials were responsible for its content" the government-speech doctrine applies).

Just as a public university has the right to "speak" by creating offices and programs to advance its mission, it likewise has the right to change that speech — or to refrain from speaking at all — by modifying, reorganizing, discontinuing, or eliminating those offices or programs when it determines they are no longer necessary, appropriate, or consistent with its mission.

22

**B. Fourteenth Amendment Violations – Equal Protection (Equality of Opportunity), Due Process, Void-for-Vagueness Doctrine**

Plaintiff next contends that the Individual Defendants violated his Fourteenth Amendment right to equal protection by "providing other faculty members with service opportunities to engage in consistent with their professional knowledge to fulfil their work obligations, while . . . discontinu[ing] Plaintiff's service opportunities consistent with his professional knowledge that fulfilled his work obligations." Compl. ¶ 206, Doc. 1 at PageID 29. Additionally, Plaintiff states the Individual Defendants violated his Fourteenth Amendment due process rights by (1) denying him "a meaningful opportunity to be heard . . . [regarding] his racial discrimination claim and fail[ing] to provide him a clear criteria/definition of what constitutes a 'bona-fide' academic freedom violation" and (2) implementing or enforcing SB 1 in an "arbitrary and capricious manner." Compl. ¶¶ 214, 217-223, Doc. 1 at PageID 30-31. These claims, like Plaintiff's First Amendment claims, have no merit.

> **i. Plaintiff's claims for violations of the Fourteenth Amendment should similarly be dismissed in their entirety pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiff fails to show Article III standing for *any* of these claims.**

As previously noted, "[t]o survive a motion to dismiss under 12(b)(1), a plaintiff must show Article III standing." *Mich. Ass'n of Pub. Sch. Acads.*, 711 F.Supp.3d at 690 (citing *Davis*, 835 F. App'x at 22-23). That is, he must show that he suffered an injury which is "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Lucas*, 2026 WL 1010045, at *4 (quoting *Spokeo, Inc.*, 578 U.S. at 339). Here, Plaintiff has simply not suffered an injury as a result of the discontinuation of several of the committees, programs, or other activities Plaintiff engaged in to fulfill his professional obligations. Nowhere in his Complaint does Plaintiff allege he has been denied a promotion, suffered a reduction in salary, had his tenure revoked, or had any other negative action taken against him because he was not provided service opportunities

consistent with his professional knowledge. Nor does he allege the Individual Defendants or anyone at the University has threatened to take any such action. In his deposition, Plaintiff *admitted* no one at the University has warned him that he is falling short in meeting his service requirements, suggested to him that his previous work with disbanded committees, projects or programs will not count towards his service requirements, prohibited him from pursuing other service opportunities, or suggested that his future annual evaluations will be negatively impacted by the Individual Defendants' implementation of SB 1 or the discontinuation of DEI programs, departments, or offices. Rice Dep. 157:17-158:12; 196:24-197:10; 198:21-25, Doc. 27 at PageID 750-51, 789-91. Plaintiff furthermore acknowledges that there are a variety of ways in which he can fulfill the service obligations required for his position and for promotion to Full Professor and that there is no requirement that he specifically chair a DEI committee. Rice Dep. 194:22-196:23, Doc. 27 at PageID 787-89. Plaintiff's general fears of the unknown or of *possible* impacts on his ability to fulfill the service obligations required for his position and for promotion are insufficient to support Article III standing for his Equal Protection claim. Rice Dep. 151:4-154:3; 157:17-158:11, Doc. 27 at PageID 744-47, 750-51.

Plaintiff likewise cannot show he suffered a "concrete and particularized" injury as a result of the alleged due process violations or the Individual Defendants' "arbitrary and capricious" implementation of SB 1. In relation to his due process claim, the racial discrimination claim Plaintiff filed with the University's Office of Equal Employment and Opportunity pertained to perceived racial discrimination against *other individuals*, not against him. Compl. ¶¶ 104-05, Doc. 1 at PageID 14; Rice Dep. 203:19-204:24, Doc. 27 at PageID 796-97. Thus, even if all the factual allegations in Plaintiff's Complaint are taken as true, Plaintiff could not have suffered any injury, much less a concrete and particularized injury, as a result of being denied "a meaningful

24

opportunity to be heard . . . [regarding] his racial discrimination claim . . . ." Compl. ¶ 214, Doc. 1 at PageID 30. Similarly, Plaintiff cannot show he has suffered a concrete and particularized injury due to the Individual Defendants' allegedly arbitrary and capricious implementation of SB 1. His compensation, tenure, and Richard T. Farmer Associate Professorship have not been impacted by the Individual Defendants' implementation of S.B. 1. Nor has his ability to speak about, discuss, or teach DEI-related topics or meet with others to discuss DEI-related topics been impacted in any way. *See infra Section IV.A.i.* Any injuries Plaintiff alleges as a result of the Individual Defendants' implementation of SB 1 are purely conjectural or hypothetical, not actual or imminent. Thus, this Court also lacks jurisdiction over Plaintiff's Fourteenth Amendment claims and Counts Four, Five and Six of the Complaint should be dismissed.

### ii. Alternatively, Plaintiff's Fourteenth Amendment claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he fails to state a claim for which relief can be granted.

*Plaintiff fails to allege intentional discrimination.*

"To state an equal protection claim, Plaintiff must show intentional and arbitrary discrimination by the state [or a state actor]; that is, he must show that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Solly v. Hoying, et al.*, No. 2:24-cv-1249, 2026 WL 1026794, at *2 (S.D. Ohio Apr. 16, 2026) (quoting *Coleman-Young v. Bonn*, No. 1:25-cv-58, 2025 WL 718974, at*6 (W.D. Mich. Mar. 6, 2025)); *see also Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) ("To state a claim, Brand needed only to allege sufficient facts to show 'that a state actor intentionally discriminated against [him] because of membership in a protected class.'") (citations omitted). "[M]ere disparate impact is not sufficient to state an equal protection claim under § 1983." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000).

25

Here, Plaintiff does not allege intentional discrimination.  Indeed, in Exhibit 13 of his Complaint, Compl. Ex. 13, Doc. 1-1 at PageID 79-82, he professes his belief that the Individual Defendants' decisions to discontinue the Office of Transformational and Inclusive Excellence, the Center for Student Diversity and Inclusion, and Miami Regional's Center for DEI were *not* intentionally discriminatory.  In his April 25, 2025 email to the Dean of the Farmer School of Business and Chair of the Farmer School of Business, Department of Management, he states that he fears that the decision to close these three centers, "while unintentional, is having a disparate impact o[n] ethnic minority staff members."  Compl. Ex. 13, Doc. 1-1 at PageID 81.  He confirms this belief – that the Individual Defendants did not intend to discriminate against ethnic minority staff members when closing the three centers – in his deposition.  Rice Dep. 203:1-18, Doc. 27 at PageID 796.  He likewise conceded that any decisions to terminate committees that he served on, such as the FSB DEI Service Committee, were not directed at him personally.  Rice Dep. 200:21-201:3, Doc. 27 at PageID 793-94.

Plaintiff's Equal Protection claim fails as a matter of law because it is undisputed that Plaintiff was not subjected to intentional discrimination.  Because intentional discrimination is an essential element of an Equal Protection claim, and because the undisputed record – including Plaintiff's own admissions – establishes that no such intentional discrimination occurred, Plaintiff's Equal Protection claim should be dismissed, or, in the alternative, summary judgment should be granted in the Individual Defendants' favor on this claim.[6]

*Plaintiff fails to identify a protected liberty or property interest.*

Plaintiff next contends that the Individual Defendants violated his due process rights by (1) denying him "a meaningful opportunity to be heard . . . [regarding] his racial discrimination claim

---

[6] Plaintiff's § 1983 Retaliation claim fails for these same reasons.

26

and fail[ing] to provide him a clear criteria/definition of what constitutes a 'bona-fide' academic freedom violation . . ." and (2) implementing or enforcing SB 1 in an "arbitrary and capricious manner." Compl. ¶¶ 214, 217-223, Doc. 1 at PageID 30-31. "When reviewing a procedural due process claim, [a court] must determine whether a protected liberty or property right is at stake and, if so, what process is due." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 546 (6th Cir. 2012) (internal citations omitted). In order to support a procedural due process claim, Plaintiff must demonstrate "(1) he had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that Defendants deprived him of this protected interest; and (3) that Defendants did not afford him adequate procedural rights before depriving him of this protected interest." *Zdebski v. Schmucker*, 972 F. Supp.2d 972, 990 (E.D. Mich. 2013) (citing *Wedgewood Ltd. P'ship I v. Twp. of Liberty*, *Ohio*, 610 F.3d 340, 349-50 (6th Cir. 2010)). In the instant case, Plaintiff fails to identify any protected liberty or property interest that the Individual Defendants interfered with — no authority suggests that Plaintiff has a "legitimate claim of entitlement" to an internal investigation of a racial discrimination claim. *The Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

Plaintiff similarly fails to allege a substantive due process claim. To support a substantive due process claim, Plaintiff must allege he "has been deprived of a particular constitutional guarantee, or . . . that the government has acted in a way that 'shock[s] the conscience.'" *Handy-Clay*, 695 F.3d at 547 (citations omitted). The constitutional guarantee or right that supports a substantive due process claim must be "deeply rooted in this Nation's history and tradition, or implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed . . . ." *Johnson v. Lyon*, 406 F.Supp.3d 651, 670-71 (W.D. Mich. 2018) (cleaned up and internal citations omitted). Plaintiff does not allege an infringement of a right "deeply

27

rooted in this Nation's history and tradition, or implicit in the concept of ordered liberty," *id.*, nor does he allege that Miami University has acted in a way that "shocks the conscience[,]" *Handy-Clay*, 695 F.3d at 547.

As Plaintiff has not identified a protected liberty or property interest, his Void-for-Vagueness claim also fails. "The void-for-vagueness doctrine exists to 'give fair notice of conduct that is forbidden or required.'" *Lifestyle Comms., Ltd. v. City of Worthington, Ohio*, 165 F.4th 1013, 1027 n.3 (6th Cir. 2026) (quoting *FCC v. Fox Television Stations*, 567 U.S. 239, 253 (2012)). To support a claim under the void-for-vagueness doctrine, Plaintiff must allege the deprivation of a protected liberty or property interest. *See City of Chicago v. Morales*, 527 U.S. 41, 52 (1999) (plurality) (holding a statute may be void for vagueness if it "fails to establish standards . . . that are sufficient to guard against the arbitrary deprivation of liberty interests"). He has not. Thus, both Plaintiff's Due Process and Void-for-Vagueness claims should be dismissed or, in the alternative, summary judgment should be granted in the Individual Defendants' favor on these claims.

**C. Disparate Impact (Title VII) and Retaliation (First Amendment and Title VII)**

Plaintiff's Disparate Impact and Retaliation claims fare no better. Plaintiff asserts that the Individual Defendants' discontinuation of the FSB DEI Service Committee, the Office of Transformational and Inclusive Excellence, the Center for Student Diversity and Inclusion, and Miami Regional's Center for DEI and elimination of the Chair of the FSB DEI Service Committee, the Vice President of the Office of Transformational and Inclusive Excellence, Director of the Center for Student Diversity and Inclusion, and Director of Miami Regional's Center for DEI positions violated his right to nondiscriminatory employment under Title VII because minority employees were disproportionately impacted. Additionally, Plaintiff states, "Defendants took

adverse employment actions against [him in response to his engagement in multiple forms of protected activity], including the refusal to internally investigate his civil rights claims and the final shutdown of the FSB DEI Service Committee[,]" in violation of the First Amendment and Title VII. Compl. ⁋ 250, Doc. 1 at PageID 35.

### i. Plaintiff's First Amendment Retaliation claim should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because he has not identified a "concrete and particularized" or "actual or imminent" injury.

"To prove a First Amendment retaliation claim, a plaintiff must show: (1) he engaged in protected speech; (2) the defendant took an adverse action against him; and (3) there is a causal connection between the protected speech and the adverse action." *Josephson v. Ganzel*, 115 F.4th 771, 783 (6th Cir. 2024) (citing *Richards v. Perttu*, 96 F.4th 911, 917 (6th Cir. 2024)). An adverse action is one that "would chill or silence a person of ordinary firmness from future First Amendment activities." *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (quotation omitted). Plaintiff alleges he was retaliated against for participating in protected speech – protesting the elimination of various DEI programs and organizations, filing a racial discrimination claim, and "notifying leadership . . . of his belief that institutional decisions being made were 'unconstitutional.'" Compl. ⁋ 249, Doc. 1 at PageID 35. However, he does not identify any adverse action taken against him. Nowhere in his Complaint does he allege the Individual Defendants or anyone at the University denied him a promotion, reduced his salary, revoked his tenure, or took or threatened to take any other adverse action in response to his exercise of protected speech. He confirms this in his deposition. *See* Rice Dep. at 157:17-158:12; 199:10-25, Doc. 27 at PageID 750-51, 792. Nor is his allegation that the Individual Defendants' refusal to internally investigate his civil rights claim and elimination of the FSB DEI Service Committee "chilled or silenced" him from future First Amendment activities plausible. Compl. ⁋ 250, Doc. 1 at PageID 35. In his

deposition Plaintiff confirms that he is still able to speak about, teach, research, or discuss DEI-related topics with students and faculty both inside and outside the classroom.  *See* Rice Dep. at 21:12-14, 19-21; 81:8-82:25; 109:19-23, Doc. 27 at PageID 614, 674-75, 702.  Thus, Plaintiff's First Amendment Retaliation claim should be dismissed or, in the alternative, summary judgment should be granted in the Individual Defendants' favor.

### ii. Plaintiff's Title VII Disparate Impact and Retaliation claims should be dismissed because he failed to exhaust all administrative remedies.

"The exhaustion of administrative remedies is a condition precedent to a Title VII . . . action." *Williams v. Northwest Airlines*, 53 Fed.Appx. 350, 351-52 (6th Cir. 2002) (citing *Zipes v. TWA*, 455 U.S. 385, 392-98 (1982)).  To proceed with Title VII discrimination claims, "a plaintiff must: '(1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue[.]'" *Peeples v. City of Detroit*, 891 F.3d 622, 630 (2018) (quoting *Granderson v. Univ. of Michigan*, 211 Fed.Appx. 398, 400 (6th Cir. 2006)).  Only after obtaining a right to sue letter from the EEOC may Plaintiff bring a Title VII action in court.  *Id.*; *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989).  As Plaintiff has not alleged that he has exhausted his administrative remedies and obtained a right to sue letter from the EEOC, his Title VII claims should be dismissed.

### iii. Plaintiff's Title VII Retaliation claim fails because he does not identify an adverse employment action taken against him.

"To make a prima facie showing of Title VII retaliation, an employee must show '(1) [he] . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015) (quoting *Niswander v. Cincinnati Ins.*

*Co.*, 529 F.3d 714, 720 (6th Cir. 2008)).  An "adverse employment action," for purposes of a Title VII retaliation claim, is a "materially adverse change in the terms and conditions of [plaintiff's] employment."  *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (quotations omitted).  Materially adverse changes include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Id.* at 798 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Plaintiff identifies no such materially adverse change in his Complaint.  He confirms as much in his deposition, testifying he has not been subject to any formal disciplinary actions, write-ups, reprimands, or any administrative actions whatsoever from the Individual Defendants, nor has his salary, compensation, tenure status, or Richard T. Farmer Associate Professorship status been impacted in any way.  Rice Dep. 157:17-158:12; 199:10-25, Doc. 27 at PageID 750-51, 792.  Furthermore, he recognizes that the discontinuation of the FSB DEI Service Committee, which he chaired, "was not directed at [him] personally[.]" Rice Dep. 200:21-201:3, Doc. 27 at PageID 793-94.  As Plaintiff has not alleged or identified a materially adverse change in his employment, Plaintiff's Title VII retaliation cannot survive a motion to dismiss, much less a motion for summary judgment.

### D.  Promissory Estoppel

Plaintiff's final claim is that the Individual Defendants are liable under a state-law theory of promissory estoppel for "abruptly and 'surgically' discontinuing [Plaintiff's service and research] outlets[.]" Compl. ⁋ 259, Doc. 1 at PageID 37.  However, the Eleventh Amendment forbids such a claim in this Court.

Under the Eleventh Amendment, federal courts *do not have jurisdiction* to require state officials to conform their conduct to state law.  *See Pennhurst State Sch. & Hosp. v. Halderman*,

31

465 U.S. 89, 120-21 (1984); *see also Bleick v. Maxfield*, No. 2:25-cv-1140, 2025 WL 3525356, at *10 (S.D. Ohio Dec. 9, 2025) ("A claim that a state official violates state law in carrying out his or her official duties is a claim against the State, which is barred by the Eleventh Amendment, depriving a federal court of jurisdiction to hear the matter."). Likewise, the Eleventh Amendment "bars suits for money damages against a state official in his or her official capacity." *Gaspers v. Ohio Dep't of Youth Servs.*, 627 F. Supp. 2d 832, 849 (S.D. Ohio 2009). This jurisdictional bar can only be overcome if the state has consented to waive its immunity or if Congress has abrogated the state's immunity. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment."); *Omni Energy Grp. LLC v. Ohio Dep't of Nat. Res.*, No. 2:25-cv-15, 2026 WL 820547, at *11 (S.D. Ohio Mar. 25, 2026) ("There are three exceptions to state sovereign immunity: (1) waiver by state consent to the suit; (2) express abrogation of state sovereign immunity by Congress; and (3) the *Ex Parte Young* doctrine.").

Here, Plaintiff's promissory estoppel claim does exactly what the Eleventh Amendment forbids—it asks this Court to enforce an alleged promise made by public university officials acting in their official capacities, governed entirely by Ohio contract principles, and to recover money damages against those officials.[7] The Individual Defendants have neither waived immunity nor consented to this suit. The Individual Defendants' immunity likewise has not been abrogated. Thus, this Court lacks jurisdiction to hear Plaintiff's promissory estoppel claim.

---

[7] While the Complaint does not expressly state a claim for monetary damages against the Individual Defendants, the relief sought implicitly encompasses such a remedy. Item 12 of the Prayer for Relief asks this Court to "direct Defendants to provide status quo ante financial and personnel resources" if returning to the status quo ante is deemed unfeasible. Compl., Doc. 1 at PageID 38. To the extent this request seeks an award of money from Individual Defendants, it is functionally a claim for monetary damages barred by the Eleventh Amendment. *See, e.g., Gaspers*, 627 F. Supp. 2d at 849.

Even assuming Plaintiff's claim is not barred by the Eleventh Amendment, it fails as a matter of Ohio law.  Under Ohio law, a promissory estoppel claim requires proof of four elements: "(1) a clear, unambiguous promise; (2) reliance upon the promise by the person to whom the promise is made; (3) the reliance is reasonable and foreseeable; and (4) the person claiming reliance is injured as a result of reliance on the promise." *Pappas v. Ippolito*, 895 N.E.2d 610, 622 (Ohio Ct. App. 2008).  But "generalized praise of an employee's performance and prospects for advancement" does not give rise to estoppel.  *Skalka v. Fernald Env't Restoration Mgmt. Corp.*, 178 F.3d 414, 424 (6th Cir. 1999).  And "an employer's general policy statements, such as would appear in an employee handbook, are usually not sufficient" either.  *Id.* at 423.

Plaintiff has not alleged sufficient facts to support a promissory estoppel claim under Ohio law.  His Complaint points to nothing more than performance reviews noting "meaningful contributions to institutional priorities" and general terms underlying his Richard T. Farmer Associate Professorship.  *See* Compl. ¶¶ 255-56, Doc. 1 at PageID 36.  Neither rises to the level of a "clear, unambiguous promise" required under Ohio law.  *See, e.g., Skalka*, 178 F.3d at 424.  Plaintiff's own sworn testimony drives this point home.  He concedes that no promises were made that the FSB DEI Service Committee would "even continue to exist," that no promises were made regarding the "longevity" of his chairmanship of the committee, and that "the university really doesn't promise anyone a permanent assignment to any specific university committee."  Rice Dep. 92:25-93:11, Doc. 27 at PageID 685-86. Nor can Plaintiff argue that he was injured by his reliance on any promise.  His tenure is intact, and no one "in the business school has intimated that [his] DEI research or service or teaching will be . . . judged differently."  Rice Dep. 158:4-10, Doc. 27 at PageID 751.  Furthermore, the Individual Defendants' actions did not cause him to lose the Fulbright Canada Research Chair Award—his own actions did.  Plaintiff declined to pursue the

33

Fulbright opportunity, despite having the University's full support. Compl. ¶ 58, Doc. 1 at PageID 8; Rice Dep. 176:14-180:24, Doc. 27 at PageID 769-73. As Plaintiff fails to show the existence of three of the four elements of a promissory estoppel claim – a clear and unambiguous promise, reasonable and foreseeable reliance on that promise, and injury as a result of that reliance – Plaintiff's claim should be dismissed.

## V. CONCLUSION

What is glaringly clear from Plaintiff's Complaint and deposition testimony is Plaintiff's complete lack of cognizable injury. As established throughout this Motion, Plaintiff's right to speak freely about DEI-related subjects or issues has not been infringed by the institutional administrative changes set in motion by the Individual Defendants in order to comply with the clear and unambiguous requirements of SB 1; his right to assemble in public spaces on Miami University's campus to discuss any subjects and issues he deems important has not been abridged; he has not been deprived of opportunities in violation of the 14th Amendment; his due process rights have not been interfered with; he has not suffered any adverse actions in violation of Title VII; and he has not been injured due to his reliance on any clear and unambiguous promises made by the Individual Defendants. In short, Plaintiff is simply the wrong plaintiff to bring such a challenge to the Individual Defendants' implementation of SB 1 — or, at best, has brought his challenge prematurely. Accordingly, for the reasons state above, Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6) or, in the alternative, summary judgment should be entered in favor of the Trustees of Miami University.

Respectfully submitted,


 */s/ Richard L. Creighton, Jr.*
Richard L. Creighton, Jr. (0021806)
Heather V. Van Hull (0104564)
Christo V. Fosse (0106079)
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street
Suite 1400
Cincinnati, OH  45202
Telephone: (513) 579-6400
Fax: (513) 579-6457
rcreighton@kmklaw.com
hvanhull@kmklaw.com
cfosse@kmklaw.com

*Attorneys for Individual Defendants*

35

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was served upon the following

via electronic mail this 5th day of May, 2026:

Darryl Rice
Dbrice1204@gmail.com, *Plaintiff, pro se*


*/s/ Heather V. Van Hull*
Heather V. Van Hull (0104564)