UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION

Darryl B. Rice, Plaintiff

Case No: 1:26-cv-155

V.

Mary Schell et al, Defendants

Judge Matthew W. McFarland

**PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS OR IN THE**

**ALTERNATIVE FOR SUMMARY JUDGMENT**

Plaintiff respectfully requests that this Court deny the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. When evaluating whether a plaintiff has stated a claim under Federal Rule of Civil Procedure 12(b)(6), "the court cannot consider 'matters outside the pleadings.'" *Berk v. Choy*, 146 S.Ct. 546, 553 (2026) (citing Fed. R. Civ. P. 12(d)). However, "[i]f, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Here, because the Defendants have introduced extensive deposition testimony and a Statement of Proposed Undisputed Facts, their Motion must be evaluated strictly under the rigorous evidentiary standards of Rule 56. Summary judgment is appropriate under Rule 56 only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion under this standard, the Court is legally required to view all facts and draw all reasonable inferences in the light most favorable to Plaintiff, the non-moving party.

It is settled law, when a defendant manufactures a factual justification that has no basis in reality, it constitutes definitive evidence of pretext that completely precludes summary judgment. *Reeves v. Sanderson Plumbing Products*, Inc., 530 U.S. 133 (2000). The developed discovery record contains overwhelming evidence of pretext (See Pl. Rep. Doc. 32, Pg. ID 1137-1138), and the Defendants have made multiple material representations to this Court that are (1) demonstrably false and (2) conclusively undermined by their own formal admissions in this

1

current pleading. Because the Defendants' defenses are entirely built upon a manufactured factual reality, a profound genuine dispute of material fact exists, mandating the total denial of their Motion.

## INTRODUCTION

As these proceedings continue, this case has distinctly become about unreliable Defendants who continually shift their narrative in an effort to evade constitutional review by this Court. In its TRO Order, this Court clarified the central issues and introduced two determinative cases that reinforce Plaintiff's entitlement to a preliminary injunction: *Josephson v. Ganzel*, 115 F.4th 771, 786 (6th Cir. 2024) and *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). Under controlling Sixth Circuit law, "professors at public universities retain First Amendment protections at least when engaged in core academic functions, such as teaching and scholarship." *Meriwether v. Hartop*, 992 F.3d 492, 505 (6th Cir. 2021). Crucially, this Court informed the parties that Josephson extended "core academic functions" to encompass "a professor's panel remarks that stemmed from his scholarship and subject of expertise." (TRO Order, Doc. 26, Pg. ID 582).

This Court also noted that courts evaluate three precise questions when a litigant challenges the constitutionality of a speech restriction on government property: "(1) whether the speech is protected under the First Amendment; (2) what type of forum is at issue and, therefore, what constitutional standard applies; [and] (3) whether the restriction on speech in question satisfies the constitutional standard for the forum." *Miller*, 622 F.3d at 533; (Doc. 26, Pg. ID 581). Because the Court previously noted it was "mindful that the record is not fully developed as to the nature of each relevant DEI-related entity or program—let alone Plaintiff's precise participation with them in relation to his academic duties" (TRO Order, Doc. 26, Pg. ID 582), Plaintiff has systematically developed the record through discovery.

That record now establishes that: (1) Plaintiff's speech at the now-shuttered forums consisted precisely of panel remarks and research presentations stemming directly from his scholarship, his subject of expertise, and content from his course, *Diversity and Cross-Cultural*

2

*Management*; (2) the now-shuttered forums functioned as designated and limited public forums open for expressive, noncommercial activity and exchange of ideas; and (3) the Defendants' standardless viewpoint restrictions fail to satisfy any standard of reasonableness or neutrality (Pl. Rep. Doc. 32, Pg. ID 1139-1150).

Realizing that the developed record exposes their initial justifications, the Defendants have manufactured a new narrative for summary judgment, claiming that "[t]he speakers or presenters at each of these conferences, programs, or events had to have the topic or content of their presentation approved by the University and its officials." This claim is a complete fabrication. The mere fact that Plaintiff received open invitations from university staff, faculty, and student committees to share his expertise does not constitute administrative vetting, censorship, or content pre-approval by university officials.

Although the Defendants attempt to mischaracterize Plaintiff's deposition testimony, nowhere in that transcript did Plaintiff state that the University ever demanded his panel remarks, presentation materials, or course content ahead of time for administrative review or approval. Plaintiff's Exhibit 75 proves this narrative is entirely false. For the Student Intercultural Leadership Conference, Plaintiff was extended an invitation to "lead a breakout session" precisely because "the student committee identified [Plaintiff] as a pivotal member of our Miami community and a champion of the diverse student experience" (Pl. Ex. 75, Doc. 33, Pg. ID 1193). For the Across-The-Divide Conference, Plaintiff was similarly invited by a fellow faculty member to sit on an academic panel to discuss "his anti-racism research" and outline how "his research helps us understand the world around us" (Ver. Compl. Pl. Ex. 38, Doc. 1, Pg. ID 163).

The Defendants have simply invented an unsubstantiated contention that carries zero factual reality. They have failed to provide this Court with any institutional policy demonstrating that Miami University exercises prior restraint or content-approval over speakers within its designated public forums. While the Defendants have formally admitted that Plaintiff "took an active role in Miami University's school-sponsored diversity, equity, and inclusion (DEI) programming" (Def. TRO Opp. Doc 6, Pg. ID 316), they have failed to produce a single email

from their servers indicating that an official ever contacted Plaintiff to review, edit, or pre-approve his content. They have not provided the name of any administrator allegedly tasked with this pervasive vetting.

Plaintiff's panel remarks and research presentations were derived entirely from his independent, peer-reviewed scholarship published in independent academic journals. The Defendants' own formal admissions completely eviscerate their newly minted "government speech" defense. In Responses to RFAs 8 and 9, the Defendants explicitly admitted that the content delivered at those panels constituted Plaintiff's own independent scholarship and professional knowledge (Pl. Ex. A, RFAs 8–9).

The Defendants' Proposed Statements of Undisputed Facts further undermine this newly invented fabrication. The Defendants explicitly state that "Plaintiff has complete freedom over his research," "Plaintiff is free to discuss DEI subjects with students…outside the classroom," and "Plaintiff is aware of no rules, regulations, or guidelines published by the university that prohibit students, faculty, or members of the general public from discussing and debating DEI subjects anywhere on any of the university's campuses" (Def. PUF; Doc. 29, Pg. ID 998). These alleged undisputed facts offered by the Defendants eviscerate the claim that they reviewed and approved Plaintiff's panel remarks and research presentations. The Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment should be denied because it puts forward two legally irreconcilable positions.

While these assertions of pervasive administrative approval are demonstrably false, if they were treated as true, the Defendants would be effectively admitting to a systemic, facial violation of the First Amendment and academic freedom rights of every faculty member and student who presented at these conferences. Faculty and students routinely served as independent speakers at the Across-The-Divide Conference (Ver. Compl., Pl. Ex. 38–40, Doc 1., Pg. ID 163–169) and the Student Intercultural Leadership Conference (Pl. Ex. 75, Doc. 33, Pg. ID 1193). If the only speech permitted at these university conferences was speech thoroughly vetted, dictated, and pre-approved by the administration, such an operational reality would constitute a direct,

4

flagrant violation of the Defendants' own campus free speech policies, Ohio SB1, Ohio's statutory FORUM Act (O.R.C. § 3345.0215), and the First Amendment. This standardless system of prior restraint represents an egregious, ongoing constitutional injury, rendering the denial of summary judgment and the issuance of a preliminary injunction necessary as a matter of law.

## BACKGROUND

Plaintiff Darryl B. Rice is an Associate Professor of Management at Miami University and holds the prestigious Richard T. Farmer Associate Professorship (*See* Pl. TRO/PI Mot., Doc. 2, Pg. ID 247). As a public university located in Oxford, Ohio, Miami University's declared institutional framework is governed by the "Teacher-Scholar" Model—a model that explicitly integrates teaching, research, and service into a singular, cohesive academic function (*See* Pl. Ex. 70, Doc. 33, Pg. ID 1163–1170). Consistent with this institutional design, Plaintiff engaged in extensive expertise-based service and expression across campus (*See* Pl. TRO/PI Mot., Doc. 2, Pg. ID 247). During his execution of these integrated service obligations, Plaintiff routinely delivered panel remarks and research presentations stemming directly from his independent scholarship, his subject-matter expertise, and content from his approved course, *Diversity and Cross-Cultural Management*, at various Designated and Limited Public Forums on campus (*See* Pl. Rep., Doc. 32, Pg. ID 1140–1150).

Ohio SB1—a statute which the Defendants themselves have formally described as "unclear" (Oral Arg. Tr., Doc. 17, Pg. ID 518) and "ambiguous" (Ver. Compl., Pl. Ex. 29, Doc. 1, Pg. ID 138)—was signed by the Governor of Ohio in March 2025 and became effective in June 2025. Using Ohio SB1 as a smoke screen, the Defendants systematically discontinued various Designated and Limited Public Forums associated with a disfavored "DEI" label, within which Plaintiff actively engaged in protected speech that fulfilled his university service obligations. The Defendants informed Plaintiff, the broader Miami University community, and the general public that these targeted discontinuations were legally mandated by Ohio SB1 (*See* Ver. Compl., Pl. Ex. 12, 28; Doc. 1, Pg. ID 78, 136).

However, Ohio SB1 is entirely textually silent on these specific now-shuttered forums (*See* Ver. Compl., Doc. 1, Pg. ID 9). The Defendants have now formally admitted to this textual silence under oath (*See* Pl. Ex. A, RFA 35). To the contrary, the now-shuttered forums were fully compliant with Ohio SB1's primary command to state universities, which explicitly mandates that institutions "support the practice, discovery, improvement, transmission, and dissemination of knowledge and citizenship education by means of research, teaching, discussion, and debate" (*See* Ver. Compl., Doc. 1, Pg. ID 32).

Once these contested administrative actions became a matter of judicial review, the Defendants abruptly pivoted their narrative. To evade constitutional review, they represented to this Court that the independent speech occurring within the now-shuttered forums constituted the University's own "government speech" (*See* TRO Order, Doc. 26, Pg. ID 581). They asserted this ownership defense despite the fact that the University or its officials never provided Plaintiff with a script, never broadcasted a unified administrative message, and never exercised a single layer of editorial control over his scholarly presentations. Furthermore, the Defendants made this expansive claim of administrative curation without introducing a scintilla of credible evidence demonstrating that these discontinued forums performed any ministerial or administrative duties (*See* Pl. Rep. Doc. 32, Pg. ID 1139).

## LEGAL STANDARD

The Supreme Court held in *Chambers v. NASCO*, Inc., 501 U.S. 32 (1991) that federal courts possess an unassailable, built-in authority to police their own dockets and punish conduct that abuses the judicial process. Under Fed. R. Civ. P. 12(f), a court may strike from a document any matter that is immaterial or impertinent. Fabricated factual assertions that have no basis in fact are completely impertinent to a lawful adjudication and serve only to mislead the tribunal, warranting the striking of such terms from the record.

Pursuant to Fed. R. Civ. P. 11(b)(3), every factual contention presented to this Court must possess actual evidentiary support. Introducing a fabricated administrative reality that has no basis in the developed discovery record violates this baseline rule, empowering the Court to issue

6

appropriate non-monetary sanctions under Rule 11(c), including the denial or striking of the offending motion.

The Defendants have made multiple material and demonstrably false statements (i.e., "The University and its officials were responsible for the content of each of these conferences, newsletters, programs, and events"; The speakers or presenters at each of these conferences, programs, or events had to have the topic or content of their presentation approved by the University and its officials"). However, the Defendants simply cannot keep their story" straight and undermine the claims by explicitly stating that "Plaintiff has complete freedom over his research," "Plaintiff is free to discuss DEI subjects with students…outside the classroom," and "Plaintiff is aware of no rules, regulations, or guidelines published by the university that prohibit students, faculty, or members of the general public from discussing and debating DEI subjects anywhere on any of the university's campuses" (Def. PUF; Doc. 29, Pg. ID 998). Furthermore, their own formal admissions in RFAs 8 and 9 (*See* Pl. Ex. A) expose the lack of truthfulness in the new invented narrative by the unreliable Defendants.

The Defendants attempt to insulate themselves from constitutional review by advancing two mutually exclusive, irreconcilable factual assertions. In seeking dismissal under Rule 12(b)(6), the Defendants declare that this case "is not a case about Miami University preventing Plaintiff from expressing his views... on the university campus or elsewhere" (Doc. 29, Pg. ID 965). Yet, in the very same motion, seeking summary judgment under Rule 56, the Defendants assert that the topic and specific content of Plaintiff's presentations at the now-shuttered forums were actively vetted and "approved by the University and its officials." This blatant contradiction exposes their entire defense as a post-hoc legal fiction designed solely to evade the First Amendment.

The Defendants are caught in a self-created legal paradox. If, as they claim to this Court, the University did not prevent Plaintiff from expressing his views and left his academic freedom uninhibited, then the speech delivered within those forums belonged strictly to Plaintiff as an independent scholar. Conversely, if the University truly exercised pervasive administrative

curation and pre-approval over the specific content of those presentations, then the University was actively regulating, vetting, and policing protected faculty expression. The Defendants cannot simultaneously claim to be passive non-interferers for standing purposes and omnipotent speech curators for the Government Speech doctrine.

This fabricated claim of content "pre-approval" has absolutely no basis in fact. Under Rule 56(c)(1), a party asserting a fact must support it by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c)(1). The discovery record is completely devoid of a single content-submission form, a single vetting policy, or a single administrative approval email demonstrating that Miami University ever micro-managed, reviewed, or signed off on Plaintiff's slides or presentation outlines before he spoke.

To the contrary, the developed record establishes that the University exercised zero editorial control, provided no scripts, and delivered no unified government message during Plaintiff's participation in the DEI Mastermind sessions (*See* Pl. 3rd Index, Pl. Ex. 81, Doc. 33, Pg. ID 1229), the Inclusive Excellence Faculty Fellows program (*See* Pl. 3rd Index, Pl. Ex. 80, Doc. 33, Pg. ID 1227), or the Student Intercultural Leadership Conference (*See* Pl. 3rd Index, Pl. Ex. 75, Doc. 33, Pg. ID 1193). Plaintiff was explicitly invited to these forums as a tenured expert to disseminate peer-reviewed research stemming directly from his subject-matter expertise and his university course syllabus (*See* Pl. 3rd Index, Pl. Ex. 79 Doc. 33, Pg. ID 1221).

It is settled law, when a defendant manufactures an administrative reality that has no basis in the discovery record to justify an adverse action, it constitutes definitive evidence of pretext that completely precludes summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

## ARGUMENTS

**First Amendment Violations – Freedom of Assembly, Freedom of Speech, Viewpoint Neutrality in Funding Decisions**

All of the Defendants' claims are defeated because the record conclusively demonstrates that Plaintiff's First Amendment rights were violated. Plaintiff incorporates all arguments

contained in the record. Plaintiff was engaged in core academic functions at designated and limited public forums explicitly opened by the University for the purposes of noncommercial expressive activity and the exchange of ideas among faculty, students, staff, alumni, corporate partners, guests, and the general public (*See* Pl. Rep., Doc. 32, Pg. ID 1139–1150).

The record establishes that these active academic forums were systematically targeted and dismantled due directly to the content of Plaintiff's speech and the "DEI" label associated with the forums. The Defendants have explicitly admitted on the record that these campus forums were targeted and shut down because they utilized "terms that the legislature found offensive" (*See* Rice Dep., Doc. 27, Pg. ID 716).

Under unbending Supreme Court and Sixth Circuit precedent, the government may not restrict speech, close designated or limited public forums, or penalize expressive associations simply because the concepts, labels, or terms utilized are deemed "offensive" or politically disfavored by the legislature. *Matal v. Tam*, 582 U.S. 218 (2017); *Iancu v. Brunetti*, 139 S.Ct. 2294 (2019). By admitting that the discontinuation of the now-shuttered forums was triggered by an official animus toward "offensive" terminology, the Defendants have conceded to a textbook, facial violation of the First Amendment's viewpoint neutrality mandate.

Furthermore, the Defendants' entire statutory compliance defense is exposed as an absolute pretextual sham (*See* Pl. Rep., Doc. 32, Pg. ID 1135–1139). The record in its entirety—including the Defendants' shifting timeline, their post-hoc "government speech" fabrications, and their legally irreconcilable courtroom positions—demonstrates that a profound, structural genuine dispute of material fact exists regarding the Defendants' true retaliatory motives. Because the Defendants cannot weaponize an ambiguous law to execute a targeted, viewpoint-based destruction of an academic's professional infrastructure, a motion to dismiss or a summary judgment must be denied.

9

B. Fourteenth Amendment Violations – Equal Protection (Equality of Opportunity),

Due Process, Void-for-Vagueness Doctrine

All of the Defendants' claims are defeated because the record conclusively demonstrates that Plaintiff's Fourteenth Amendment rights were violated.

**B. The Defendants Explicitly Violated Plaintiff's Fourteenth Amendment Rights to Equal Protection, Due Process, and Protections Against Void-for-Vagueness**

All of the Defendants' claims are defeated because the record conclusively demonstrates that Plaintiff's Fourteenth Amendment rights were violated. Plaintiff incorporates all arguments contained in the record.

*1. Arbitrary Classifications and the Denial of Equality of Opportunity (Equal Protection)*

The record establishes that the Defendants have denied Plaintiff an equality of opportunity in his employment conditions by enforcing arbitrary, label-based classifications. The Defendants have formally admitted under oath that "the University has not provided Plaintiff new service roles since the Farmer School of Business DEI Service Committee was discontinued" and that "the criteria for Plaintiff's promotion to Full Professor remained unchanged" (*See* Pl. Ex. A, RFAs 16–17).

Furthermore, the Defendants have admitted that the newly created FSB Societal Impact Committee retains absolute academic freedom to discuss and utilize Plaintiff's research and course materials (*See* Pl. Ex. A, RFA 37), yet they refuse to extend that same academic freedom or professional standing to the FSB DEI Committee which Plaintiff chaired. These formal admissions, combined with the evidence on the record, demonstrate that the Defendants have selectively targeted Plaintiff's professional platforms based on an arbitrary administrative label, creating an unequal employment structure that actively impairs his ability to advance to Full Professor.

*2. Arbitrary and Capricious Deprivation of the Opportunity to be Heard (Due Process)*

The Defendants' administrative maneuvers violate the core tenets of Due Process, which forbids state actors from taking arbitrary and capricious actions that violate their own established

10

institutional codes. The Defendants have admitted under oath that there was absolutely no change in the text or status of Ohio SB1 between September 5, 2025 (the date of the last committee meeting) and September 12, 2025 (the date the committee was summarily discontinued) (*See* Pl. Ex. A, RFA 14). Instead, the Defendants have provided completely irreconcilable, shifting explanations for the sudden dissolution (*See* Pl. Rep. Doc. 32, Pg. ID 1137).

This standardless shutdown directly violated Miami University's own explicit institutional policies governing Research Support, Campus Free Speech, and Changes in Employment Conditions, while simultaneously violating their primary statutory directive under Ohio SB1 to support the open dissemination of knowledge.

Furthermore, the Defendants have admitted that Ohio SB1 was not even in effect when they summarily refused to internally investigate Plaintiff's mandatory racial discrimination disclosure (Pl. Ex. A, RFA 34). Accordingly, the Defendants fabricated Ohio SB1 as a false barrier to insulate themselves from compliance reviews and deny Plaintiff an opportunity to be heard. This standardless evasion constitutes a clear, actionable violation of Plaintiff's due process protections against arbitrary state action.

*3. Standardless Enforcement of an Undefined, Moving Target (Void-for-Vagueness)*

In open court and while under oath, the Defendants explicitly stated that "the law [Ohio SB1] is not clear" (Oral Arg. Tr., Doc. 17, PageID 518), and their own General Counsel formally characterized Ohio SB1 as "ambiguous" (*See* Ver. Compl., Pl. Ex. 29, Doc. 1, PageID 138). This pattern of acknowledged vagueness is not limited to Ohio SB1; it also applies to its legislative predecessor, Ohio SB83. Indeed, the University's own President formally informed the entire Miami University community that the administration maintained severe "concerns regarding vagueness in certain terms" (See Pl. 3rd Index, Pl. Ex. 85, Doc. 33, PageID 1262).

Crucially, in their formal admissions under oath, the Defendants conceded that neither the State of Ohio nor the Defendants themselves have ever defined the terms "DEI" or "DEI offices/departments" within the text of Ohio SB1 or within the University's own internal policies

11

(*See* Pl. Ex. A, RFAs 28–29). The record also demonstrates that the Defendants use a '*function and activities*' test to preserve some DEI-related forums (FSB Passport) and a '*label*' test to discontinue other DEI-related forums (*See* Pl. Rep. Doc. 32, Pg. ID 1140-1141), constituting standardless and arbitrary enforcement.

Under the Fourteenth Amendment's Void-for-Vagueness doctrine, a state institution cannot enforce a sweeping administrative purge using regulatory terms that are completely undefined, ambiguous, and subject to the fluid whims of individual administrators. Because the Defendants have admitted to executing an enforcement campaign in the absolute absence of objective definitions, rules, or standards, they have engaged in an unconstitutional prior restraint. Therefore, a profound genuine dispute of material fact exists for trial, and the Defendants' motion must be denied.

## C. Disparate Impact (Title VII) and Retaliation (First Amendment and Title VII)

All of the Defendants' claims are defeated because the developed discovery record conclusively demonstrates clear, actionable evidence of pretext. Plaintiff incorporates all arguments contained in the record.

### *1. Shifting and Contradictory Explanations Establish an Inference of Retaliatory and Discriminatory Motive Under Title VII*

Under controlling Sixth Circuit jurisprudence, a plaintiff can establish that an employer's stated justification is a pretext for discrimination or retaliation by demonstrating that the offered reasons: (1) had no basis in fact, (2) did not actually motivate the adverse action, or (3) were insufficient to motivate the action. *Miles v. South Central Human Resource Agency*, 946 F.3d 883, 888 (6th Cir. 2020). Crucially, the Sixth Circuit has repeatedly held that an employer's shifting, inconsistent, or post-hoc explanations for an employment action are definitive evidence of pretext that completely precludes the entry of summary judgment. *Asmo v. Keane, Inc.*, 471 F.3d 666, 672 (6th Cir. 2006); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996).

12

Here, the Defendants are caught in a web of shifting and contradictory explanations that reveal a discriminatory and retaliatory motive. When the central administration initially executed its sweeping, label-based purge, it explicitly informed Plaintiff, the faculty, and the public that the dissolution of the Farmer School of Business (FSB) DEI Service Committee was an involuntary, non-discretionary act strictly mandated by the passage of Ohio SB1 (*See* Ver. Compl., Pl. Ex. 12, 28; Doc. 1, Pg. ID 78, 136).

However, once subjected to judicial scrutiny in these proceedings, the Defendants abruptly abandoned this statutory-mandate defense. To evade constitutional review, they manufactured an entirely new narrative for summary judgment, claiming that the discontinued entities were actually platforms for "government speech" over which the University exercised total, pervasive editorial control and pre-approval (*See* TRO Order, Doc. 26, Pg. ID 581). The Defendants cannot legally represent to the faculty that their hands were tied by an un-enacted state statute, while simultaneously representing to this Court that they chose to eliminate these platforms as an exercise of total, unguided administrative discretion. These irreconcilable, fluid positions constitute textbook evidence of pretext under *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000).

*2. The Evidentiary Record Conclusively Validates Plaintiff's Claims of Retaliation and Disparate Impact*

This bad-faith administrative shift is further illuminated by the timeline of the Defendants' actions, which reveals a targeted campaign that directly caused an unequal workplace structure and disparate impact. The Defendants have formally admitted under oath to several critical facts that completely undermine their defense:

*The Timeline Disconnect*: The Defendants admitted that absolutely no change occurred in the text or status of Ohio SB1 between September 5, 2025 (the date of the last committee meeting) and September 12, 2025 (the date the committee was summarily dismantled) (See Pl. Ex. A, RFA 14), proving that their sudden, disruptive intervention was a standardless administrative choice rather than a statutory obligation.

*The Refusal to Investigate*: The Defendants admitted that Ohio SB1 was not even in effect when they summarily refused to internally investigate Plaintiff's mandatory civil rights disclosure regarding the disparate impact on minority staff (See Pl. Ex. A, RFA 34). They weaponized an un-enacted statute as a false barrier to insulate themselves from regulatory oversight.

*The Active Injury*: The Defendants have formally admitted that "the University has not provided Plaintiff new service roles since the Farmer School of Business DEI Service Committee was discontinued" while his baseline criteria for promotion to Full Professor remain completely unchanged (See Pl. Ex. A, RFAs 16–17).

By explicitly admitting that they stripped Plaintiff of his long-standing leadership infrastructure, blocked his live research collaborations (See Pl. Ex. A, RFA 13), and provided him with zero alternative service avenues to maintain his career progression under the Teacher-Scholar Model, the Defendants have established the objective adversity of their conduct.

Because an employer cannot offer shifting, post-hoc fabrications to justify the selective destruction of a protected employee's professional workspace, a profound, structural genuine dispute of material fact exists for trial. Accordingly, the Defendants' motion must be denied.

**D. Promissory Estoppel**

All of the Defendants' claims regarding Promissory Estoppel fail because the developed record conclusively demonstrates that a profound genuine dispute of material fact exists for trial. Under Ohio law, to prevail on a claim of Promissory Estoppel in an employment context, a plaintiff must establish: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance upon that promise; and (3) resulting injury or detriment. *Mers v. Dispatch Printing Co.,* *19 Ohio* St. 3d 100, 104 (1985); *Patrick v. Painesville Commercial Props., Inc.,* 123 Ohio App. 3d 575, 583 (Ohio Ct. App. 1997). Plaintiff incorporates all arguments contained in the record.

Notably, the Defendants assert that no actionable promise has been breached because Plaintiff retains his base salary and formal job title (See Def. PUF; Doc. 29, Pg. ID 998). This defense relies entirely on a superficial and pretextual reading of the employment relationship.

14

The record establishes that Miami University induced Plaintiff's long-standing employment, research output, and extensive institutional service through explicit, clear, and unambiguous promises anchored in the University's governing Teacher-Scholar Model (Pl. 3rd Index, Pl. Ex. 70, Pg. ID 1163-1170) and his appointment to the Richard T. Farmer Associate Professorship (*See* Pl. TRO/PI Mot., Doc. 2, Pg. ID 247). Under these formal frameworks, the University unambiguously promised Plaintiff a stable, non-arbitrary professional infrastructure within which he was required to execute a mandatory 20 percent university service workload allocation alongside his research collaborations.

Plaintiff reasonably, foreseeably, and detrimentally relied upon these institutional promises by dedicating his academic career, peer-reviewed journal publications, and leadership energies to building the Farmer School of Business (FSB) DEI Service Committee as its formal Chair. The Defendants' pretextual breach of this clear promise is conclusively proven by their own formal discovery admissions under oath. The Defendants have admitted that they unilaterally liquidated Plaintiff's service committee platform, "intentionally prevented an active, ongoing research collaboration" between Plaintiff and his colleagues (*See* Pl. Ex. A, RFA 13), and have subsequently provided zero new service roles to replace the stripped infrastructure (*See* Pl. Ex. A, RFA 16).

The Defendants cannot promise a tenured scholar a stable, contractually bound environment governed by the Teacher-Scholar Model, enforce a mandatory 20 percent service requirement for promotion to Full Professor (*See* Pl. Ex. A, RFA 17), and then claim no promise was broken when they summarily destroy his entire service infrastructure and admit to providing no alternative avenues. Because the record contains overwhelming evidence of a detrimental, pretextual breach of the University's unambiguous institutional commitments, a profound genuine dispute of material fact exists, and Defendants' motion must be denied.

## CONCLUSION AND PRAYER FOR RELIEF

What is glaringly clear from the developed discovery record is that the unreliable Defendants simply cannot keep their story straight. They have yet to offer a single consistent or

15

cohesive explanation for their unconstitutional actions on campus. Their defense strategy across these proceedings has amounted to nothing more than throwing a shifting series of post-hoc fabrications against the wall to see what sticks.

However, the wall the Defendants are throwing everything against is the United States Constitution. Nothing is sticking because their standardless, label-based purge, their admitted targeting of terms deemed "offensive" by a state legislature, and their intentional sabotage of Plaintiff's research collaborations and service infrastructure flatly run afoul of the First and Fourteenth Amendments. Because the Defendants' hybrid motion relies entirely on mutually exclusive, legally irreconcilable positions that are flatly disproven by their own formal admissions under oath, the Defendants have utterly failed to demonstrate the absence of a genuine dispute of material fact.

For the foregoing reasons, Plaintiff respectfully requests that this Court:

*Deny* the Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment in its entirety;

*Hold* this matter for a full adjudication on the merits at trial; and

*Grant* Plaintiff's pending Motion for a Preliminary Injunction to halt the ongoing constitutional violations and irreparable structural degradation of his academic workspace.

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, a true and correct copy of this document was served via electronic mail to Attorney Richard Creighton at rcreighton@kmklaw.com.

Pro se, Darryl Rice
dbrice1204@gmail.com

16